IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LUTHER JEROME WILLIAMS, )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>RICHARD ALLEN, Commissioner )<br>Alabama Department of Corrections, )<br>et al., )<br>)<br>   Defendants. ) | Case No. 2:07-cv-307-MEF-SRW |

## **BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Luther Jerome Williams hereby opposes Defendants' Motion to Dismiss. Given that the injury alleged in Mr. Williams' complaint—*i.e.*, execution by a method that violates his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments—has not yet occurred, Defendants' argument that this suit is time-barred is completely without merit.

Prior to the United States Supreme Court's denial of certiorari on March 26, 2007, the § 1983 claims asserted here were premature and unripe because habeas relief, had it been granted, would have mooted them. *See*, *e.g.*, Texas v. United States, 523 U.S. 296, 300 (1998)("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."). Moreover, in light of the fact that the constitutionality of Alabama's method of execution was then being challenged by several other death-row inmates in this very Court, it was not certain until the State actually moved, on April 4, 2007, to set an execution date whether it would seek to execute Mr. Williams using the challenged method (or some other) before this Court's final adjudication of the open

1

constitutional questions.[1] As discussed below, there are also a number of other practical concerns that would have made it impossible for Mr. Williams to bring this suit prior to July 31, 2004, as the Defendants contend he should have done.

Questions of ripeness aside, Defendants' motion must be denied because the applicable statute of limitations does not begin to run until the alleged invasion of constitutional rights actually occurs, *see*, *e.g.*, United States v. Kubrick, 444 U.S. 111, 120 (1979), and because Defendants cannot show that any delay on the part of Mr. Williams was inexcusable or caused them any prejudice.[2]

**Standard of Review**

As the Eleventh Circuit has repeatedly said, the threshold is "exceedingly low" for a complaint to survive a Rule 12 motion to dismiss. Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985); Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev., 711 F.2d 989, 995 (11th Cir. 1983). In reviewing a motion to dismiss, the Court must take "all of the material allegations of the complaint as true while liberally construing the complaint in favor of the plaintiff." Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998); Roberts v. Florida Power & Light Co., 146 F.3d 1305, 1307 (11th Cir. 1998), *cert. denied*, 525 U.S. 1139 (1999). A motion to dismiss "should not be granted unless it

---

[1] Mr. Williams filed this suit before any execution date had been set. On May 21, 2007, the Alabama Supreme Court ordered that August 23, 2007, be set as the date for Mr. Williams' execution.

[2] In its Order of May 8, 2007 (Doc. #7), this Court ordered Mr. Williams to file this response along with "any evidentiary materials" by May 22, 2007. Although no evidentiary issues are implicated with respect to Defendants' motion to dismiss—particularly given Defendants' failure to submit any evidentiary materials where they have the burden of persuasion—Mr. Williams nevertheless notes that he has not yet had the opportunity to conduct discovery and reserves the right to conduct discovery in accordance with the Federal Rules of Civil Procedure with respect any discoverable matter in this case.

appears to a certainty, 'that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Ancata, 769 F.2d at 702–03 (quoting Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984)).

I.   **Mr. Williams' claims are not barred by the statute of limitations because the injury alleged in his Complaint—execution by a method that violates his rights under the Eighth and Fourteenth Amendments—has not yet occurred.**

As Judge Myron Thompson of this Court recently held in another death-row inmate's § 1983 challenge to Alabama's execution method, the Defendants' assertion of a statute-of-limitations defense is "anomalous" in that they "are essentially arguing that the statute of limitations has already run on an injury that has not yet occurred." Jones v. Allen, ___ F. Supp. 2d at ____, 2007 WL 1140416 at *3 (M.D. Ala. April 17, 2007), *aff'd*, ___ F.3d ___, 2007 1225393 (11th Cir. April 27, 2007), *cert. denied*, ___ S. Ct. ___, 2007 WL 1257938 (May 3, 2007). It is telling that the Defendants chose not to appeal Judge Thompson's well reasoned rejection of their statute-of-limitations defense in Jones.

For statute-of-limitations purposes, a § 1983 claim is characterized as a tort action, and the Court must borrow the statute of limitations which the state provides for personal-injury torts. Wallace v. Kato, 127 S. Ct. 1091, 1094 (2007); Owens v. Okure, 488 U.S. 235, 249–50 (1989); Wilson v. Garcia, 471 U.S. 261, 279–80 (1985), *superseded by statute on other grounds as recognized in* Jones v. R.R. Donnelly & Sons, Co., 541 U.S. 369, 379–80 (2004). Here, Alabama law provides that the applicable limitations period is two years. Ala. Code § 6-2-38(*l*). Although state law determines the limitations period, "the accrual date of a § 1983 action is a question of federal law." Wallace, 127 S. Ct. at 1095.

Under federal law, the "general rule" has long been that "a tort claim accrues at the time of the plaintiff's injury." United States v. Kubrick, 444 U.S. 111, 120 (1979); *see also* Diaz v. United States, 165 F.3d 1337, 1339 (11th Cir. 1999)("The general rule is that a claim under the [Federal Tort Claims Act] accrues at the time of injury.")  More recently, in Wallace, the Supreme Court held, "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations begins to run, when the wrongful act or omission results in damages." *Id.*, 127 S. Ct. at 1097 (quoting 1 C. Corman, Limitations of Actions § 7.4.1, at 526–27 (1991)); *see also* Jones, 2007 WL 1140416 at *5 ("It is generally accepted that a cause of action for a tort accrues when there has been an invasion of the plaintiff's legally protected interest.  Ordinarily, this invasion occurs *at the time the tortious act is committed*.")(emphasis in original)(quoting Albertson v. T.J. Stevenson & Co., 749 F.2d 223, 228 (5th Cir. 1984)).

This rule mirrors well-established common-law tort principles.  According to the Restatement, for example, "the statute [of limitations] does not usually begin to run until the tort is complete," and a "tort is ordinarily not complete until there has been an invasion of a legally protected interest of the plaintiff."  Restatement (2d) of Torts § 899, cmt. c.; *see also* 51 Am. Jur. 2d *Limitation of Actions* § 167 ("cause of action in tort accrues when a wrongful act causes a legal injury"); 54 C.J.S. *Limitation of Actions* § 193 ("A cause of action sounding in tort generally accrues at, and limitations begin to run from, the date on which the act causing the injury is committed . . . .").

Here, Mr. Williams seeks declaratory and injunctive relief to prevent the Defendants from executing him using an unconstitutionally tortious method.  The alleged invasion of Mr. Williams' constitutional rights will not occur until the time of his execution, and the tort is therefore not yet complete.  As this Court held in Jones, the 2002 statutory change in Alabama's

4

method of execution does not constitute the tortious injury: "Knowledge of a needless risk of a painful death at the hands of the State does not itself violate the Constitution; only the execution itself would." *Id.*, 2007 WL 1140416 at *6.

The essential purpose of statutes of limitations is to prevent stale claims that can only be supported with stale evidence. *See*, *e.g.*, Jones, 2007 WL 1140416 at *7. As the Supreme Court explained in Wilson, "Just determinations of fact cannot be made when, because of the passage of time, the memories of witnesses have faded or evidence is lost." *Id.*, 471 U.S. at 271. Here, however, barring Mr. Williams' claim on statute-of-limitations grounds does not even remotely assuage such evidentiary concerns. Instead, the Defendants contend that the limitations period should begin to run and ultimately expire as Mr. Williams moves *closer* in time to the complained-of injury. As this Court recognized in Jones, such a construction is completely contrary to the historic and policy reasons behind statutes of limitations. *Id.*, 2007 WL 1140416 at *7.

Defendants argue that it should have been "apparent" to Mr. Williams at the time the legislature changed the law that he had a constitutional claim. However, the language that Defendants quote from Porter v. Ray, 461 F.3d 1315 (11th Cir. 2006), and Mullinax v. McElhenney, 817 F.2d 711 (11th Cir. 1987), states an exception to Kubrick's general rule. The exception prevents the limitations period from commencing before an injured plaintiff can learn that his injury gave rise to a legal claim. As the Fifth Circuit explained in Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924, 928 (5th Cir. 1975), statutes of limitation are subject to "[e]quitable modifications, such as tolling and estoppel" where a tortious injury has already occurred but the facts supporting the cause of action are not yet known to the injured plaintiff. In such circumstances, it is appropriate to "apply the familiar equitable modification to statutes of

limitation: the statute does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Id. at 930.  In arguing for an accrual date that precedes the constitutional injury alleged, the Defendants have turned this language—quoted in Porter and Mullinax, but originally appearing in Reeb—on its head.  Neither Porter nor Mullinax stands for the proposition that the statute of limitations should ever be triggered *before* the occurrence of the injury alleged simply because it "should be apparent" to the plaintiff that he might be tortiously injured at some point in the future.

Moreover, Mr. Williams could not, as a practical matter, have brought this suit when Defendants claim that he should have.  Defendants rely on a Sixth Circuit case, Cooey v. Strickland, 479 F.3d 412 (6th Cir. 2007), and a Fifth Circuit case, Neville v. Johnson, 440 F.3d 221 (5th Cir. 2006), for the proposition that Mr. Williams' method-of-execution claim could have been filed anytime after his conviction became final on direct appeal.  In making this argument, Defendants fail to mention that it was not until the United States Supreme Court's decision in Hill v. McDonough, 126 S. Ct. 2096 (2006), that it was even possible to raise such a claim in *this* Circuit.  Prior to the Supreme Court's Hill decision, the Eleventh Circuit and its underlying district courts repeatedly dismissed prisoners' § 1983 claims challenging particular methods of execution for want of jurisdiction.  *See*, *e.g.*, Hill v. Crosby, 437 F.3d 1084, 1085 (11th Cir. 2006), *reversed and remanded sub nom.*, Hill v. McDonough, 126 S. Ct. at 2096; Rutherford v. Crosby, 438 F.3d 1087, 1089 (11th Cir. 2006); Robinson v. Crosby, 358 F.3d 1281, 1284 (11th Cir. 2004); Fugate v. Department of Corrections, 301 F.3d 1287, 1288 (11th Cir. 2002).

In addition, the Supreme Court has made clear that the Eighth Amendment's prohibition against "cruel and unusual" punishments must be evaluated in light of "the evolving standards of decency that mark the progress of a maturing society." Trop v. Dulles, 356 U.S. 86, 100–101 (1958); *see also*, Roper v. Simmons, 543 U.S. 551, 560–61 (2005); Atkins v. Virginia, 536 U.S. 304, 311–12 (2002). Thus, the contours of what constitutes "cruel and unusual" punishment violative of the Eighth Amendment change over time. For example, in Atkins, 536 U.S. at 321, the Supreme Court held that the ever-evolving norms of our society prohibit the execution of mentally retarded inmates even though such executions were constitutionally permitted just twelve years earlier. *See* Penry v. Lynaugh, 492 U.S. 302, 340 (1989). Likewise, it is now constitutionally impermissible, in light of evolving standards of decency, to execute an inmate who was under the age of eighteen at the time he committed his crime. *Compare* Roper, 543 U.S. at 574–75, *with* Stanford v. Kentucky, 492 U.S. 361, 380 (1989).

As such, a challenge to Alabama's method of execution in 2002 or 2004 would not necessarily control the outcome of the same challenge today. If Mr. Williams had challenged the method of his execution through a § 1983 claim years ago, any adverse ruling he might have received then would have little value today as the time of his execution draws nearer. The relevant constitutional standard is rooted in the present; it makes no sense from a practical and prudential standpoint for a death-row inmate to be required to challenge the method of his anticipated execution when his habeas appeals still have years to run and might ultimately result in his conviction or death sentence being overturned.

Nor have Alabama's execution procedures remained static over time. While Plaintiff has not yet had an opportunity to conduct discovery in this action, it is clear at least from this Court's decision in Jones that Alabama's current execution protocol was preceded by earlier revisions

that may have differed in material ways. *Id.*, 2007 WL 1140416 at *4 & n.2.  Even if it were to rule that the statute of limitations has already been triggered, this Court must still construe the Complaint in favor of Mr. Williams, and there is nothing there that indicates "to a certainty" that the current execution protocol was adopted more than two years before the commencement of this action.  *See* Ancata, 769 F.2d at 702–03.

Apart from the extensive Eleventh Circuit precedent and other practical considerations standing in the way of an earlier challenge to Alabama's execution method, Defendants' reliance on Cooey is also misplaced because that decision was based, in substantial part, on the fact that the State of Ohio had made details of its execution procedures publicly available.  Thus, reasoned Cooey's majority, the plaintiff there "should have known of his cause of action" years before he filed suit.  *Id.*, 479 F.3d at 422.  Here, by contrast, Defendants have never made Alabama's execution protocols publicly available.  Indeed, Defendants have gone so far as to enter highly-restrictive protective orders in the other execution-method challenges that are pending in this district such that Mr. Williams cannot even access what limited discovery the Defendants have apparently produced to the other similarly situated plaintiffs.[3]

Finally, Defendants cite a number of cases in which the Eleventh Circuit and the Supreme Court have denied stays of execution.  These stay cases—Diaz v. McDonough, 472 F.3d 849 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 851 (2006); Rutherford v. McDonough, 466 F.3d 970 (11th Cir. 2005), *cert. denied*, 127 S. Ct. 465 (2006); and Gomez v. United States Dist. Court for the Northern Dist. of Cal., 503 U.S. 653 (1992)—should have no bearing on the statute-of-limitations questions before this Court because whether a claim is time-barred and

---

[3] *See*, *e.g.*, Doc. #28 in McNair v. Allen, Case No. 2:06-cv-695-WKW (consolidated with Callahan v. Allen, Case No. 2:06-cv-919-WKW); Doc. #13 in Grayson v. Allen, Case No. 2:06-cv-1032-WKW.

whether a plaintiff is entitled to a stay to litigate that claim are two entirely separate and analytically discrete issues. The equitable factors that the Court must consider in determining whether to grant a stay play no role whatsoever in the statute-of-limitations calculus.

**II.     To the extent that the equitable doctrine even applies to this case, Mr. Williams' claims are not barred by laches because Defendants have not shown that delay on the part of Mr. Williams, if any, was inexcusable or caused them any prejudice.**

Although Defendants correctly identify the necessary elements of the doctrine of laches, they completely overlook the initial matter of whether, in light of their statute-of-limitations arguments, the doctrine even applies to this case. Traditionally, the doctrine of laches is used to bar untimely claims only where there is no applicable statute of limitations. *See* Huseman v. Icicle Seafoods, Inc., 471 F.3d 1116, 1125 (9th Cir. 2006)("Laches is an equitable affirmative defense available for actions that do not have a specific applicable statute of limitations."); Lyons Partnership, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 798 (4th Cir. 2001)("[W]hen considering the timeliness of a cause of action brought pursuant to a statute for which Congress has provided a limitations period, a court should not apply laches to overrule the legislature's judgment as to the appropriate time limit to apply for actions brought under the statute."); Patton v. Bearden, 8 F.3d 343, 348 (6th Cir. 1993)("[T]he doctrine is usually applied where no statute of limitations governs," and there is "a strong presumption that laches will not apply when the analogous statue of limitations has not run, absent compelling reason."); Equal Employment Opportunity Comm'n v. Dresser Indus., Inc., 668 F.2d 1199, 1201 (11th Cir. 1982)("Laches is an equitable doctrine designed to prevent unfairness to a defendant due to a plaintiff's delay in filing suit in the absence of an appropriate statute of limitations."); Kicklighter v. New York Life Ins., 145 F.2d 548, 549 (5th Cir. 1944)("Laches is a doctrine formulated by courts of equity to provide a rule of limitations where no statute of limitations is applicable to equity suits."). Here,

given that a two-year statute of limitations applies to Mr. Williams' § 1983 claims, the Court should not apply the doctrine of laches to impose any shorter period.

Even assuming that the equitable doctrine of laches properly applies to Mr. Williams' claims, Defendants cannot satisfy any of the doctrine's elements. "To establish laches, a defendant must demonstrate 1) a delay in asserting a right or a claim, 2) that the delay was not excusable, and 3) that there was undue prejudice to the party against whom the claim is asserted." AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1545 (11th Cir. 1986), *cert. denied*, 481 U.S. 1041 (1987); *see also* Kason Indus., Inc. v. Component Hardware Group, Inc., 120 F.3d 1199, 1203 (11th Cir. 1997); Citibank, N.A. v. Citibanc Group, Inc., 724 F.2d 1540, 1546 (11th Cir. 1984), *reh'g denied*, 731 F.2d 891 (1984); Dresser, 668 F.2d at 1202.

First, Mr. Williams cannot be said to have "delayed" filing his claims because the harm alleged in his Complaint has not yet occurred. Mr. Williams seeks declaratory and injunctive relief against a *future* harm, and as is discussed above, his § 1983 claims only accrue at the time of his injury. *See*, *e.g.*, Kubrick, 444 U.S. at 120.

Even if there was some delay on Mr. Williams' part, it was entirely reasonable and excusable. Prior to the Supreme Court's denial of certiorari on March 26, 2007, the claims asserted in this case would have been premature and unripe in that habeas relief, if granted, would have rendered any challenge to Alabama's method of execution moot. "Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" Allen v. Wright, 468 U.S. 737, 750 (1984); *see* U.S. Const. art. III, § 2. Whether the plaintiff has made out a "case or controversy" within the meaning of Article III is "the threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498 (1975). The ripeness doctrine, grounded in both constitutional and prudential

10

concerns, serves to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Labs. v. Gardner, 387 U.S. 136, 148–49 (1967), *overruled on other grounds*, Califano v. Sanders, 430 U.S. 99 (1977). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998). Here, the existence of Mr. Williams' § 1983 claims was entirely contingent upon the outcome of his petition for habeas relief. Although he may have foreseen the *possibility* of his execution by lethal injection, his § 1983 claims were not sufficiently immediate or concrete to ripen into an justiciable case or controversy before the conclusion of his habeas appeals.

Indeed, given that there were already several other death-row inmates challenging the constitutionality of Alabama's method of execution, it was entirely reasonable for Mr. Williams to wait to see whether the State would move for an execution date before filing this suit. Given Alabama's undisputed obligation to conduct executions in accordance with the requirements of the Eighth and Fourteenth Amendments, it was reasonable to expect that it might wait until the serious constitutional questions surrounding its execution procedures were settled before moving to execute Mr. Williams.

Moreover, as also discussed above, there were any number of other practical concerns that made Mr. Williams' delay, if any, entirely reasonable. Prior to the Supreme Court's decision in Hill, 126 S. Ct. at 2096, Mr. Williams could not have brought his § 1983 claims in this Circuit. The standard for determining what constitutes "cruel and unusual" punishment under the Eighth Amendment changes over time, *see*, *e.g.*, Roper, 543 U.S. at 551, and it is only within the last year that other federal courts have found the lethal injection procedures used by other states to be constitutionally deficient. *See* Morales v. Tilton, 465 F. Supp. 2d. 972, 981

(N.D. Cal. 2006)(finding that implementation of California's lethal injection protocol creates "an undue and unnecessary risk of an Eighth Amendment violation" which is "intolerable under the Constitution"); Taylor v. Crawford, Case No. 05-4173-CV-C-FJG, 2006 WL 1779035 (W.D. Mo. June 26, 2006)(concluding that "Missouri's lethal injection procedure subjects condemned inmates to an unnecessary risk that they will be subject to unconstitutional pain and suffering when the lethal injection drugs are administered"). The unfixed nature of Alabama's execution protocols also demonstrates that filing years earlier, even if possible, would have been premature. As a practical matter, Defendants have been, and continue to be, free to change the lethal injection procedures at any time.

"The last element a defendant must prove is that the plaintiff's delay, whatever its measure, caused the defendant undue prejudice." Kason, 120 F.3d at 1206; *see also* Commercial Union Ins. Co. v. SEPCO Corp., 300 F. Supp. 2d 1198, 1208 (N.D. Ala. 2004)("Material prejudice resulting from the delay is essential."). According to the Eleventh Circuit, the "[c]lassic elements" of undue prejudice "include unavailability of witnesses, changed personnel, and the loss of pertinent records." Dresser, 668 F.2d at 1203. Here, Defendants have adduced no evidence of any prejudice whatsoever. There is absolutely no reason to believe that the Defendants will be unable, due to any delay on the part of Mr. Williams, to obtain evidence relevant to the constitutional issues raised in this action.

Nor can the Defendants claim that they have relied to their detriment on Mr. Williams' purported failure to file this suit earlier than he did. For example, Defendants have recently filed a response in the consolidated McNair and Callahan cases indicating that they intend to petition the Alabama Supreme Court for execution dates notwithstanding the fact that Mr. McNair's and

Mr. Callahan's § 1983 claims have been pending in this Court since last year.[4] Defendants have not shown that they would have acted any differently had Mr. Williams filed this action at some earlier time.

Instead of prejudice, Defendants argue that Alabama's "interest" in carrying out timely executions should be sufficient to establish a laches defense. Defendants have cited no authority for such a proposition, nor could they. The cases that they do cite—Hill, 126 S. Ct. at 2096; Nelson v. Campbell, 541 U.S. 637 (2004); and Jones, 2007 WL 1140416, *aff'd*, 2007 WL 1225393—discuss the State's interest in enforcing death sentences only within the context of whether to grant a stay of execution. The balancing of interests discussed in Hill, Nelson, and Jones is simply not pertinent to Defendant's motion to dismiss.

In any event, the commencement of this case does not thwart Defendants' interest in carrying out death sentences. The issue presented in this litigation is simply whether the method of execution employed by Alabama complies with the dictates of the Constitution. As should be obvious, Defendants can have no valid interest in violating Mr. Williams' Eighth and Fourteenth Amendment rights.

## Conclusion

Mr. Williams promptly filed this action upon the conclusion of his habeas appeals and the State's motion to set an execution date. Defendants' arguments against a stay are utterly immaterial to the instant motion. If Defendants were truly confident that Alabama's execution method passes constitutional muster, then they would not be using procedural motions to prevent this Court from reaching the merits of any of the now pending § 1983 challenges while

---

[4] *See* Doc. #57 in McNair v. Allen, Case No. 2:06-cv-695-WKW (consolidated with Callahan v. Allen, Case No. 2:06-cv-919-WKW)("In response to this Court's order . . . the State of Alabama has not requested execution dates for Willie McNair or James Callahan. However, it is the State of Alabama's present intention to file such motions by May 15, 2007.").

simultaneously pressing the Alabama Supreme Court to set execution dates for all of the plaintiffs.  Mr. Williams' § 1983 claims are not time-barred by the applicable statute of limitations or by laches, and Defendants' motion must be denied.

                                  Respectfully submitted,

                                  /s/ Joel L. Sogol
                                  Joel L. Sogol, Esq. (SOG-001)
                                  811 21st Avenue
                                  Tuscaloosa, AL  35401
                                  (205) 345-0966
                                  Fax:  (205) 345-0971
                                  jlsatty@wwisp.com

                                  Counsel for Luther Jerome Williams

Dated:  May 22, 2007

**CERTIFICATE OF SERVICE**

   I hereby certify that on this 22d day of May 2007, I caused a true copy of the within Brief in Opposition to Defendants' Motion to Dismiss to be filed electronically with the Court's CM/ECF system and thereby served upon each of the following via email:

| | |
|---|---|
| James Clayton Crenshaw, Esq. | James William Davis, Esq. |
| (ccrenshaw@ago.state.al.us) | (jimdavis@ago.state.al.us) |
| Office of the Attorney General | Office of the Attorney General |
| Alabama State House | Alabama State House |
| 11 South Union Street | 11 South Union Street |
| Montgomery, AL 36130 | Montgomery, AL 36130 |

                /s/ Joel L. Sogol