IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LUTHER JEROME WILLIAMS,              )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )  No. 2:07-cv-307-MEF-SRW
                                     )
RICHARD ALLEN, Commissioner          )
Alabama Dept. of Corrections,        )
Et al.,                              )
                                     )
        Defendants.                  )

**DEFENDANTS' REPLY TO BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

The defendants reply to Williams' brief opposing the defendants' motion to dismiss on statute of limitations and laches grounds. In a recent order, see Doc. 10, this Court allowed defendants to file their reply regarding the doctrine of laches on June 5. Thus, this reply omits any discussion of the doctrine of laches.

**I.  The Statute Of Limitations Bars Williams's § 1983 Action**

With regard to the two-year statute of limitations, the dispute between the parties – and thus the dispositive question here – is when the limitations period began to run. In Wallace v. Kato, __ U.S. __, 127 S.Ct 1091, 1095 (2007), the Supreme Court held that, in § 1983 actions, "it

is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action; that is, when the plaintiff can file suit and obtain relief." (citations omitted). Williams has filed a § 1983 action that facially challenges Alabama's execution procedures, which were adopted in 2002.

Accordingly, Williams' cause of action accrued in July 2002, when Alabama adopted its current three-drug lethal injection procedure and Williams' conviction and sentence were already final. See Cooey v. Strickland, 479 F.3d 412 (6th Cir. 2007)(holding that the statute of limitations in a method-of-execution case accrues when the defendant's sentence is final and/or the State adopts the challenged execution method). At that moment, Williams had a "complete and present cause of action" because he could "file suit and obtain relief." Wallace, 127 S.Ct at 1095; also see Jones v. Allen, ---F.3d----, 2007 WL 1225393 (11th Cir. Apr. 27, 2007)(emphasizing that the lethal-injection challenge could have been filed sooner because it is well known that all States use the same three-drug cocktail). Williams' complaint, which was filed in April 2007, is time-barred by the two-year statute of limitation.

Citing Jones v. Allen, __ F.Supp.2d __, 2007 WL 1140416 at *3 (M.D. Ala. April 17, 2007), Williams counters that the limitation period cannot run until he is actually injured – presumably by an execution accomplished via use of the protocol that he currently challenges. Doc. 8 at 3-9. But under that theory, a statute of limitations can never apply in a § 1983 method-of-execution challenge because the plaintiff fails to suffer an injury until he is executed (and his case becomes moot). Id.; cf. Cooey, 479 F.3d at 418 ("Setting an accrual date at the point when the actual harm is inflicted, i.e., at the point of execution, is problematic in this context because the death-sentenced inmate's claim would not accrue until he was executed, at which time it would also be simultaneously moot."). As shown below, once Williams' claim is properly characterized, it is clear that Williams' theory that his cause of action can only accrue at the moment of execution is wrong because his cause of action was fully realized – and thus the limitations period began to run – when Alabama adopted the lethal injection protocol Williams challenges here.

**A.  Williams's Execution Cannot Be The Trigger For Accrual**

To understand why accrual cannot begin at execution, it is important to define what this case is *not*.  It is not a challenge to Williams' execution.  Any challenge to the fact that Williams will be executed would lead to the dismissal of this § 1983 complaint as a successive habeas petition under AEDPA.

In allowing method-of-execution claims to be brought under § 1983, the Supreme Court made clear that the relief sought in a § 1983 action cannot attack or foreclose the plaintiff's execution.  See Hill v. McDonough, 126 S.Ct. 2096, 2102 (2006); Nelson v. Campbell, 541 U.S. 637, 647-48 (2004)(ruling that because such challenges are brought under § 1983, which authorizes challenges to conditions of confinement, the inmate cannot challenge lethal injection as unconstitutional per se).  For example, if the defendant changed the part(s) of the execution protocol challenged by a § 1983 plaintiff to an acceptable alternative, the plaintiff's § 1983 action would be moot because only the conditions of the plaintiff's confinement can be challenged under § 1983.  See Nelson, 541 U.S. at 646 (approving Nelson's § 1983 action as not attacking his actual

execution in part because "[Nelson] has alleged
alternatives that, if they had been used, would have
allowed the State to proceed with the execution as
scheduled"). If, however, the plaintiff challenged his
actual execution, and not merely a part of the procedure
for carrying out his execution, then his claim could only
be brought as a habeas petition. See Hutcherson, 468 F.3d
at 754 ("Simply put, if the relief sought by the inmate
would either invalidate his conviction or sentence or
change the nature or duration of his sentence, the inmate's
claim must be raised in a § 2254 habeas petition, not a §
1983 civil rights action.").

Accordingly, it is clear that Williams' § 1983
complaint does not challenge his execution - because it
cannot do so. Instead, Williams' complaint is a challenge
to Alabama's execution protocol. This is clear from the
face of Williams' complaint. In his cause of action,
Williams claims that his execution would be
unconstitutional due to Alabama's use of "improperly
designed and improperly maintained . . . anesthesia" and
"chemicals that cause severe pain." Doc. 1 at 6. Then, as
the plaintiff inmate alleged in Nelson, Williams asserts

that the State "could select additional or alternative chemicals and/or retain qualified medical personnel to administer its chosen chemicals to ensure the constitutionality of its lethal injection procedure." Id. at 7. Finally, to ensure that his complaint falls under § 1983 instead of § 2254, Williams asks this Court to "grant injunctive relief to enjoin defendants from executing [Williams] with inadequate anesthesia and execution procedures that violate the Eight Amendment" and to "enter a declaratory judgment that defendants' inadequate anesthesia and execution procedures violate the Eight Amendment." Id. at 7. Williams does not ask this Court to prevent his actual execution if the State chooses other, allegedly more appropriate, drugs and implementation procedures.

This distinction between a challenge to the execution protocol versus a challenge to the actual execution is important because it highlights the fatal flaw in Williams' theory of (non)accrual. Williams' complaint is with the protocol's designated drugs and implementation methods, not Williams' future execution. Thus, Williams' complaint arises from Alabama's adoption of the challenged protocol –

specifically the three drugs and implementation methods chosen by the State in 2002. If the State changed those drugs and implementation methods to an alternative deemed acceptable by Williams, Williams would no longer have a viable § 1983 claim.

Thus – and this is the point – Williams must concede that, to be a viable § 1983 action, his claim arose and can be resolved without Williams ever being executed. That Williams' execution actually occurs, therefore, is not necessary for Williams to raise his claim and obtain relief. And if Williams' execution isn't necessary for Williams to raise a viable claim, then Williams must be wrong when he argues that his injury does not arise – and his claim accrue – until the moment of his execution. See Wallace, 127 S.Ct at 1095 (holding that a § 1983 claim accrues when the plaintiff can "file suit and obtain relief").

### B. Williams's Claim Accrued On July 1, 2002, When Alabama Adopted Its Current Execution Protocol

As outlined above, Williams' execution date cannot be the date of accrual because: (1) Williams cannot legally challenge his execution in a § 1983 action, and (2) Williams' execution was not a prerequisite to the filing of

this action or obtaining relief. Accordingly, this Court must determine when accrual occurs.

Again, "it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action; that is, when the plaintiff can file suit and obtain relief." <u>Wallace</u>, 127 S.Ct at 1095. In applying <u>Wallace</u>, the Sixth Circuit recently determined that a method-of-execution challenge accrues at the later of two points: (1) the conclusion of direct appellate review, (2) when lethal injection became the State's method of execution. <u>Cooey v. Strickland</u>, 479 F.3d 412, 416 (6th Cir. 2007)(quoting <u>Wallace</u>, 127 S.Ct. 1091, 1095)("the standard rule that [accrual occurs] when the plaintiff has complete and present cause of action"). The policy behind establishing such an accrual date is sound and based on common sense. Once a defendant knows he will be executed, and he knows how he will be executed, he has all the necessary knowledge to "file suit and obtain relief" on a method-of-execution claim. <u>Wallace</u>, 127 S.Ct at 1095.

On July 1, 2002, Alabama adopted the three-drug execution protocol Williams challenges here. By that time, Williams' direct appellate review was finalized; thus, he

knew he would be executed under Alabama's adopted protocol. Accordingly, on July 1, 2002, Williams had "a complete and present cause of action" against the use of Alabama's execution protocol.    Id.

That the defendants' suggested accrual date is correct is further proved by the fact that Williams could have raised the same claims he now raises back in July 2002. Alabama used the same three drugs, and the same method for injecting those drugs, in July 2002. See Jones, 2007 WL 1225393 at * 3 n.3 ("The fact that Jones knew or should have known before 2006 that the State uses the same three-drug cocktail as nearly every other state where substantially similar challenges have been made, coupled with the fact that the alleged risks associated with the cocktail were known three years before Jones filed his complaint, compels us to reject any argument Jones has made that attempts to pursue this challenge earlier were impeded by the secrecy of the protocol."). Accordingly, the complaint's allegations about the drugs and their method of implementation could have been challenged in July 2002 just as they were in April 2007.

Because Williams' cause of action was available in July 2002, it accrued in July 2002. Because Williams waited to file his claim until April 2007, his claim is time-barred by the two-year statute of limitations.

**C.   Requiring Inmates To File Their Method-of-Execution Challenges In A Timely Manner Is Consistent With The Historical Purposes Behind Statutes of Limitations**

Contrary to Williams' assertion, see Doc. 8 at 8, statutes of limitation have many historical and policy purposes that are served by holding that his method-of-execution challenge accrued in July 2002 when Alabama changed its execution method to lethal injection. The following cases from a multitude of jurisdictions demonstrate that the purpose behind a statute of limitations is more than just to prevent stale claims. Indeed, the encouragement of prompt presentation of claims and the protection of defendants from fear of litigation are also policy reasons behind having a statute of limitations.

One fundamental "purpose of a statute of limitations is to encourage prompt presentation of claims." <u>Havens v. Ritchey</u>, 582 N.E. 2d 792, 794 (Ind. 1991). Other "policy reasons behind statutes of limitations include: the prompt

recovery of damages, penalizing plaintiffs who are not industrious in pursuing claims, security against stale demands, relieving defendants' fear of litigation, prevention of fraudulent claims, and a remedy for general inconveniences resulting from delay." Gladych v. New Family Homes, Inc., 664 N.W.2d 705, 708-09 (Mich. 2003); see also Hatcher v. State Farm Mut. Auto. Ins. Co., 712 N.W. 2d 744, 749 (Mich. App. 2005) (same); Nielsen v. Barnett, 485 N.W. 2d 666, 669-70 (1992) (same); see Kish v. A.W. Chesterton Co., 930 So. 2d 704, n. 6 (Fla. App. 3 Dist. 2006) (citing Thomas E. Bevis, Florida Revision Council, Project on Statutes of Limitations: Some Policy Considerations (1972))("The Legislature was well aware in 1974 when the fraud statute of repose was first enacted, that such time limitations (1) compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend while the evidence is still fresh; (2) [p]rotect potential defendants from the protracted fear of litigation; and (3) [p]romote security and stability in human affairs by stimulating activity and punishing negligence."); Estate of Kuhns v. Marco, 620 N.W. 2d 488, n. 1 (Iowa 2000) ("There are other

11

policy considerations underlying the statute of limitations. They include freeing the defendant from the worry produced by the fear of litigation, removing the burden of stale claims from the courts, and removing the uncertainty of unsettled claims from the marketplace."); Masse v. Clark, 2007 WL 1468820, *4 (W.D. Wash. 2007) (slip op.)("Finally, and not to be ignored, is the basic philosophy underlying the idea that society itself benefits, except in capital cases, when there comes a time to everyone, be it long or short, that one is freed from the fears and burdens of threatened litigation.").

As these decisions demonstrate, holding that death-row inmates' method-of-execution challenges accrue when their sentences are final or when the State adopts the challenged execution method furthers most of the policy considerations behind statutes of limitations. First, such holding would require the inmate to file his action within a reasonable time, and penalize him for "not [being] industrious in pursuing claims." Gladych, 664 N.W.2d at 708-09. Requiring an inmate to bring his lawsuit within a reasonable time would allow the parties to fully litigate the claims and would allow the court sufficient time to

fully consider the claims. _Id._ Holding that inmates should file their challenges within two years of their sentences becoming final or the State's adoption of its execution protocol would also relieve "defendants' fear of [belated] litigation" and would "prevent[] fraudulent claims" filed for no other purpose than to delay the inmates execution. _Id._ Finally, properly applying the statute of limitations to bar belated claims would "remedy [the] general inconveniences resulting from plaintiff's delay," such as expedited discovery and expedited litigation, both of which result in rushed decisions by the courts. _Id._

In short, Williams' assertion that the application of the statute of limitations to his method of execution claims fails to serve any historical or policy purpose behind such limitations period is misplaced and ignores a multitude of policy considerations behind the enactment of such statutes. As shown above, requiring inmates to file their method-of-execution challenges in a timely manner serves most of the historical purposes behind statutes of limitations.

II. **THE REASONS THAT WILLIAMS GIVES FOR NOT BEING ABLE TO RAISE HIS LETHAL-INJECTION CHALLENGE SOONER HAVE BEEN REJECTED BY THE ELEVENTH CIRCUIT AND BY OTHER JUDGES IN THIS DISTRICT**

Williams offers various reasons to justify his delay in filing his method-of-execution challenge. All of these reasons have been rejected by the Eleventh Circuit or by other judges in this district.

A. **The Eleventh Circuit Has Flatly Rejected The Contention That Method-of-Execution Challenges Are Ripe Only After The Conclusion of Federal Habeas Review**

As previously stated in the Defendants' Motion to Dismiss, Williams filed his § 1983 challenge with unjustifiable delay by filing it two weeks after the conclusion of his federal habeas review. See Doc. 6 at 3-4 (setting forth summary timeline of relevant events). Williams, in conclusory fashion, states that he delayed filing his § 1983 lethal-injection until the conclusion of federal habeas review because his lawsuit was not ripe until that moment. However, when Williams filed his petition for writ of certiorari in the United States Supreme Court on December 11, 2006, it should have been clear to him that a denial of the petition would remove the final obstacle to a lifting of the state-court automatic

14

stay of execution. See Alabama Rules of Appellate Procedure, Rule 8(d)(1). It should have been equally clear that once the Alabama Supreme Court lifted the stay, Williams might have as few as 31 days before the date of execution. Id. (requiring the date of execution to be "not less than 30 days" from the date of the order setting for the execution date). At the time Williams filed his petition for certiorari, therefore, he should have been aware, at the very least, that the likely execution of his sentence was rapidly approaching. Instead of diligently filing a manner of execution claim, Williams waited an additional four months to file suit.

Williams' contention that his lethal-injection challenge is premature and unripe until the conclusion of federal habeas review is easily rejected. Because a § 1983 lawsuit and federal habeas corpus petition are mutually exclusive causes of action, there is no impediment to filing a § 1983 action while state or federal appeals are actively being pursued. See Nelson v. Campbell, 541 U.S. 637, 643 (2004); Hutcherson v. Riley, 468 F.3d 750, 754 (11th Cir. Oct. 24, 2006). Issues that are not cognizable

in habeas corpus are cognizable under § 1983. Parallel litigation thus poses no difficulty.

In the context of addressing a recent application for a stay of execution, the Eleventh Circuit addressed inmates who choose to file their lethal-injection challenges only at the conclusion of federal habeas review. <u>Jones v. Allen</u>, ---F.3d----, 2007 WL 1225393 (11th Cir. Apr. 27, 2007). The Eleventh Circuit concluded, among other things, that such a strategy is a risky one that can result in a stay of execution being denied because there is not sufficient time to consider the § 1983 lawsuit:

> We agree with the district court's finding of fact that one of the most naturally foreseeable risks facing an inmate who waits to file his method-of-execution challenge until many months after his federal habeas petition has been denied on appeal is that an execution date will be set during the pendency of the proceedings, thus necessitating the entry of a stay if full adjudication and an appeal are to be had. This risk is particularly foreseeable in Alabama, where the Alabama Supreme Court is authorized to enter an order fixing an inmate's date of execution 'at the appropriate time.' Ala. R. App. P. 8(d)('The supreme court <u>shall</u> <u>at</u> <u>the</u> <u>appropriate</u> <u>time</u> enter an order fixing a date of execution.' (emphasis added in <u>Jones</u>) It is common practice in Alabama for the State to seek an execution date soon after the Supreme Court denied

16

*certiorari* review of an inmate's federal
habeas petition. As a matter of common
sense, completion of collateral review
eliminates the last possible obstacle to
execution, and Jones should have foreseen
that the execution date would likely be
set promptly upon completion of
collateral review.

*    *    *    *    *    *    *    *    *

Waiting to file suit until the
Supreme Court has denied *certiorari*
review of an inmate's federal habeas
petition, or, as Jones did, waiting until
a petition for *certiorari* has been
pending for over three months, is simply
too late to avoid the inevitable need for
a stay of execution. See Harris v.
Johnson, 376 F.3d 414, 417 (5th Cir.
2004)("The brief window of time between
the denial of certiorari and the state's
chosen execution date … is an
insufficient period in which to serve a
complaint, conduct discovery, depose
experts, and litigate the issue on the
merits.").

*    *    *    *    *    *    *    *    *

Jones says that he did not pursue
his method-of-execution claim any earlier
than November 2006 because it was not
ripe for consideration before that time.
Jones argues that ripeness occurred only
when there was a 'strong possibility'
that he 'actually faced execution' by
lethal injection. We need not determine
with specificity when Jones's claim
became ripe. But see Gomez v. U.S. Dist.
Ct. for N.D. Cal., 503 U.S. 653, 654, 112
S.Ct. 1652, 1653, 118 L.Ed. 2d 293
(1992)("This claim [a challenge to lethal
injection] could have been brought more

17

than a decade ago.'). However, we can say in any event that, even under Jones's definition of ripeness, there was far more than a 'strong possibility' that Jones would be put to death by lethal injection by January 2006 (when we denied relief on Jones's habeas petition). <u>See Harris</u>, 376 F.3d at 418 (requiring method-of-execution claim to be pursued even when death by lethal injection is merely 'an event <u>reasonably</u> <u>likely</u> to occur in the future")(emphasis in original). Indeed, by January 2006, given the extremely small chance of securing *certiorari* review in the Supreme Court, it was all but guaranteed that Jones would die by lethal injection. Yet Jones has offered no reason at all for his decision to wait nearly ten additional months to file this suit.

<u>Jones</u>, at *3 n.2. Thus, as demonstrated above, Williams' contention that his claim is premature or unripe because of his pending federal habeas appeal has been flatly rejected by the Eleventh Circuit.

Furthermore, Williams' contention here ignores that "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence." <u>Hill</u>, 126 S.Ct. at 2104. In other words, after a death-row inmate has exhausted his appeals and his sentence has been duly adjudicated, it is then the appropriate time for the State to position itself to carry out that judgment. Thus, the State of Alabama here moved

the Alabama Supreme Court to set Williams' execution date as soon as possible after the conclusion of Williams' federal habeas appeals, when the automatic-stay provisions under Rule 8 of the Alabama Rules of Appellate Procedure no longer applied to Jones. See Ala. R. App. P. 8(d) (Stays in Criminal Cases").

The following cases, which also address the issue of unjustifiable delay in filing a lethal-injection in the context of whether or not to grant a stay, have held likewise concerning inmates who file § 1983 actions long after they could have originally been brought. See Hicks v. Taft, 431 F.3d 916, 916-917 (6th Cir. 2005) (rejecting motion for stay of execution in § 1983 lethal injection challenge where action was filed on the "eve of execution" and discussing Dennis v. Taft, where stay was denied even though the § 1983 was filed four months prior to the scheduled execution date); Harris v. Johnson, 376 F.3d 414 (5th Cir. 2004) (stay denied in § 1983 case filed ten weeks before scheduled execution date). These decisions do not necessarily turn on the fact of the exact moment that a § 1983 action becomes ripe; instead they uniformly turn on whether the inmate could have brought the suit at an

earlier time, far removed from when the State could have sought an execution date. See e.g., Rutherford, 466 F.3d at 974-976; Hill, 464 F.3d at 1259 ("[T]he fact remains that, during the pendency of his various collateral challenges, Florida had considered the same type of claim upon which Hill now seeks relief. In light of this context, Hill cannot claim that it was impossible for him to initiate his federal suit any earlier."); Harris, 376 F.3d at 418 ("For the entirety of his eighteen years on death row, Harris knew of the state's intention to execute him in this manner. It was during that period-in which the execution was not so much an imminent or impending danger as it was an event reasonably likely to occur in the future-that he needed to file his challenge. By waiting as long as he did, Harris leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out."). Because Williams has wholly failed to show that he could not have brought this suit earlier, his conclusory argument that he delayed filing because his lawsuit was premature or unripe is easily rejected.

B.  **Williams' Assertion That He Could Not Have Raised His Lethal-Injection Challenge Until the Supreme Court's Decision In <u>Hill</u> Is Wrong**

Williams contends that it was not possible to raise a lethal injection in the Eleventh Circuit until June 12, 2006, the date of the United States Supreme Court's decision in <u>Hill</u>.  Williams apparently offers this as an excuse for his dilatory filing.  It is true that in <u>Hill v. McDonough</u>, ---U.S.----, 126 S.Ct. 2096, __ (2004), the Supreme Court ruled that a claim challenging a method of execution could be raised in a § 1983 lawsuit rather than in a habeas petition.  Williams is most certainly wrong on his overall point, namely, that the challenge itself could not have been filed before <u>Hill</u> was decided.  The plaintiff inmate in <u>Hill</u> filed such a challenge even though circuit precedent mandated that such actions should be raised in a habeas petition.  <u>See</u> <u>Hill v. Crosby</u>, 437 F.3d 1084, 1085 (11th Cir. 2006).  Thus, Williams was not prohibited from filing a § 1983 action before <u>Hill</u> was decided.  Williams, that is, could have been Hill.

In <u>Cooey v. Strickland</u>, 479 F.3d 412 (6th Cir. 2007), the Court dealt with and rejected a similar argument.  The plaintiff inmate in <u>Cooey</u> contended that the statute of

21

limitations had not accrued until the Supreme Court's decision in <u>Nelson v. Campbell</u>, 541 U.S. 637, 641, 124 S.Ct. 2117, 2123 (2004), which ruled that a § 1983 was the appropriate vehicle for inmate challenging the proposed use of a "cut-down" procedure. The plaintiff inmate made the further argument that he was "precluded" from filing a § 1983 challenge before <u>Nelson</u> was decided. In rejecting that argument, the <u>Cooey</u> Court stated that "the plaintiff in <u>Nelson</u> was similarly barred by circuit precedent at the time he filed his suit. So long as there remains the possibility of en banc reconsideration and Supreme Court review, circuit does not completely foreclose all avenues for relief." <u>Cooey</u>, 479 F.3d at 422 (quoting <u>Harris v. Johnson</u>, 376 F.3d 414, 418-19 (5th Cir. 2004)).

In another lethal-injection challenge filed in this district, United States District Judge Keith Watkins rejected a similar claim. <u>See</u> <u>Grayson v. Allen</u>, No. 2:06-cv-1032-WKW, 2007 WL 1491009 (M.D. Ala. May 21, 2007)(Slip Copy). Judge Watkins stated as follows:

> Grayson's argument that § 1983 method-of-execution challenges were not available until after the Supreme Court's decision in <u>Hill</u> is unpersuasive. The history of method-of-execution litigation suggests that one should not risk the

22

> outcome Grayson now faces.  In May 2004,
> <u>Nelson</u> opened the door to § 1983 actions
> challenging lethal injection.  [Footnote
> omitted.]   Hill seized the opportunity
> first, but the opportunity was open to
> all, including Grayson.   See <u>Rutherford</u>
> <u>v. Crosby</u>, 438 F.3d 1087, 1092 (11th Cir.
> 2006)("Yet Hill filed the lawsuit without
> any grant of certiorari on the issue.
> Rutherford could have done exactly the
> same thing."), <u>vacated</u> <u>on</u> <u>other</u> <u>grounds</u>,
> <u>Rutherford v. McDonough</u>, ---U.S.----, 126
> S.Ct. 2915 (2006)(mem.).  Certiorari was
> granted in <u>Hill</u> on January 25, 2006, and
> the opinion was published on June 12,
> 2006, nearly 30 months after <u>Nelson</u> was
> published, over ten months after
> certiorari was granted in <u>Hill</u>, and over
> five months after the law was changed in
> <u>Hill</u>.  These are windows of time, if used
> wisely by Grayson, could have avoided the
> current dilemma.  If Grayson faces a
> risk, it is a risk he assumed by unwisely
> sleeping on his rights.

<u>Grayson</u>, at *7.  This Court should likewise reject any

contention that the delay in filing was due to the claim not

being available until the release of the Supreme Court's

decision in <u>Hill</u>.

Moreover, Williams could have amended his habeas

petition in 2002 when Alabama adopted lethal injection as

the method of execution.  He did not even try.

In conlusion, for the foregoing reasons, Williams is

thus wrong when he contends he was prohibited from raising a

lethal-injection challenge in a § 1983 before <u>Hill</u> was decided.

### C. The Supreme Court's Doctrine of "Evolving Standards of Decency" Does Not Excuse Williams' Unjustifiable Delay

Williams next contends he delayed filing his lethal-injection challenge because of the "evolving standards of decency" applicable to Eighth Amendment challenges. But Williams has not cited to any compelling authority that indicates "evolving standards of decency" are shifting against the traditional three-drug cocktail. In <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002), the Supreme Court emphasized that the touchstone for determining society's standards is in fact "legislation enacted by the country's legislatures." <u>Id.</u> at 312. It is therefore noteworthy that 37 of the 38 states that allow capital punishment use lethal injection as the method of execution, and defendants are not aware of a single state legislature that has recently moved to another method. Finally, statistics show since 2002, the number of executions by lethal injection has remained relatively static. <u>See</u> Death Row U.S.A., Winter 2007, NAACP Legal Defense and Education Fund. That publication states that 71 persons were executed in 2002, 65 in 2003, 59 in 2004, 60 in

2005, and 53 in 2006.  Those numbers do not establish any kind of indication that "evolving standards of decency" have turned against lethal injection.  The "evolving standards of decency," whatever their stage of evolution, do not give Jones an excuse for waiting to file until he did, in April 2007.

### D. Williams' Unjustifiable Delay Cannot Be Blamed On Any Change To Alabama's Execution Protocol

Williams finally contends that he delayed the filing of his lethal-injection challenges because Alabama's execution procedures have changed over time.  The Eleventh Circuit rejected a similar argument in evaluating the complaint filed in Jones which is virtually identical to the complaint filed by Williams.  Jones, *3 n.3.  The Jones Court ruled that any changes to the execution protocol offered no justifiable excuse for delay especially when the crux of the complaint centered on the three-drug cocktail, which is used by virtually every other state that carries out executions.  Id.  In other words, "[Williams] either was or should have been aware of the risks involved and the potential challenge to the lethal injection procedure will before he filed suit."  Id.  This Court should likewise reject Williams

assertion that he delayed in filing his lawsuit due to any

alleged changed in Alabama's execution procedures.

                            Respectfully submitted,

                            TROY KING
                            ALABAMA ATTORNEY GENERAL

                            /s/  J. Clayton Crenshaw
                            J. CLAYTON CRENSHAW  (CRE007)
                            ASSISTANT ATTORNEY GENERAL

### CERTIFICATE OF SERVICE

This is to certify that on the 29th day of May, 2007, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will electronically send a copy of the same to the following: **Joel L. Sogol.**

I also served a copy of the foregoing document on the following attorney by placing a copy of the same in the United States mail, first class postage prepaid and addressed as follows:

```
Christopher H. Little
LITTLE MEDEIROS KINDER BULMAN
& WHITNEY, P.C.
72 Pine Street
Providence, RI  02903
```

/s/  J. Clayton Crenshaw
J. Clayton Crenshaw
Assistant Attorney General

OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7300 Office
(334) 353-3637 Fax
Email: ccrenshaw@ago.state.al.us