### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

```
LUTHER JEROME WILLIAMS,        )
                               )
     Plaintiff,                )
                               )
v.                             )  No. 2:07-cv-307-MEF-SRW
                               )
RICHARD ALLEN, Commissioner    )
Alabama Dept. of Corrections,  )
et al.,                        )
                               )
     Defendants.               )
```

### DEFENDANTS' REPLY TO SUPPLEMENTAL BRIEF

The defendants respond to Williams' contention (made in Docs. 8 and 14) that his lawsuit should not be dismissed on the ground of laches.  This Court should follow the recent decision in Grayson v. Allen, 2007 WL 1491009 (M.D. Ala. May 21, 2007), dismissing another death-row inmate's § 1983 challenge to Alabama's method of execution on the ground that the doctrine of laches bars the claim.

### I. THIS COURT SHOULD FOLLOW GRAYSON

This court should follow the well-reasoned opinion in Grayson and dismiss this case based upon the doctrine of laches.  Williams has not made any compelling argument why this Court should not follow Grayson.  As demonstrated

below, this case lines up with <u>Grayson</u> applying the elements of the doctrine of laches.

Williams contends that the court in <u>Grayson</u> found that Grayson's § 1983 lethal-injection challenge was dilatory because he filed it four and half years after filing a previous § 1983 challenge requesting DNA testing. Doc. 14 at 1-2. Williams thus asserts his lethal-injection challenge was not dilatory because, unlike <u>Grayson</u>, he has not previously litigated a § 1983 challenge and because he "promptly" filed his instant action upon the conclusion of his federal habeas appeal. Doc. 14 at 2.

The court in <u>Grayson</u>, contrary to Williams's argument, did not find Grayson's lethal-injection challenge dilatory solely on the grounds that Grayson had litigated a previous § 1983 action. In fact, <u>Grayson</u> merely referenced the previous litigation in finding that the lethal-injection action, just like Grayson's § 1983 action seeking DNA testing, was dilatory because it could have been filed sooner. <u>Grayson</u> at *6. Specifically, the court stated: "The same observations apply here; this action could have been filed sooner, before Grayson was in the shadow of an execution date." <u>Id.</u> Similarly, Williams could have filed

2

his action sooner and not initiated it when he is in the shadow of his own execution date. Williams's attempt to create a distinction on the basis that Grayson had litigated a previous § 1983 action before initiating his present lethal-injection challenge should be easily rejected.

Williams also contends <u>Grayson</u> is distinguishable because it is in a different procedural posture. The court in <u>Grayson</u> ruled on a motion for summary judgment as opposed to here where this court is considering a motion to dismiss. See Doc. 14 at 2-3. This is a distinction without a difference because the defendants here do not support their motion to dismiss with any evidentiary materials. Even assuming the facts alleged in Williams's complaint to be true, they are due to be dismissed because they were asserted too late – after the end of federal habeas review, after the State of Alabama moved for an execution date, and years after Williams knew or should have known of his claim.[1]

---

[1] Even though <u>Grayson</u> does refer to evidentiary materials, <u>see</u> <u>Grayson</u> at n.11, n.14, and n.15, those references do not appear to be essential to the court's ruling that the doctrine of laches applies to bar the lawsuit. If this Court chooses to consider evidentiary materials, it may treat defendants' motion as one for summary judgment. This motion is due to be granted either way.

Williams finally contends that the court in <u>Grayson</u> made "several errors of law." Doc. 14 at 3-6. Williams contends that the court in <u>Grayson</u> mistakenly applied state law rather than federal law. See id. at 3. Even if Williams is correct on that point, he does not make any argument that demonstrates how applying federal law would have led to a different outcome. Thus, that argument requires no further response.[2]

## II. WILLIAMS'S CLAIMS ARE BARRED BY LACHES

The court in <u>Grayson</u> correctly dismissed the § 1983 action on the grounds of laches. The court there applied the following elements in dismissing the case: (1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted. <u>See</u> <u>Grayson</u> at 7-11. As a general rule, two elements are necessary to a finding of laches: "(1) Delay by a party in asserting a known right or claim, or stated otherwise, lack of diligence, lapse of time, or failure timely to assert such right or claim; and (2) prejudice injury, harm, hardship,

---

[2] Williams's arguments that the court in <u>Grayson</u> incorrectly applied state law, see Doc. 14 at 4-6, will be addressed in section II of this reply.

damage, circumstances, or condition, that is caused by or results from the delay." Am. Jur. Equity § 158 (Apr. 2007). "The doctrine of laches is purely equitable in nature and may be invoked to deny equitable relief to one guilty of unconscionable delay in asserting a claim." Stone v. Gulf American Fire and Cas. Co., 554 So. 2d 346, 362 (Ala. 1989). As demonstrated below, this Court should follow Grayson and dismiss Williams's § 1983 action.

**A.   Unreasonable Delay in Asserting Claim**

Williams's sentence changed to lethal injection by operation of law on July 31, 2002. See Ala. Code § 15-18-82.1 (stating that Alabama switched from electrocution to lethal injection on July 1, 2002, as the primary form of execution, and giving death-row inmates 30 days to elect death by electrocution instead). At that point in time, Williams had a federal habeas petition pending in the United States District Court for the Northern District of Alabama. See Williams v. Allen, 458 F.3d 1233, 1237 (11th Cir. 2006)(stating that Williams filed his habeas petition in 2001 and that the district court denied it in April 2005). Even though Williams's federal habeas petition remained pending until it was denied on April 20, 2005, he

did not file an amendment to challenge lethal injection. At the time that Williams's habeas petition was pending, a method-of-execution challenge was appropriately raised in a habeas petition.  See Breedlove v. Moore, 74 F.Supp.2d 1226, 1251-52 (S.D. Fla. 1999)(ruling that the method-of-execution claim raised in the habeas petition was procedurally barred because it had not been raised in state court).

The mechanism by which to raise such challenges has changed in recent years.  The Supreme Court, in Nelson v. Campbell, 541 U.S. 637, 124 S.Ct. 2117 (2004), ruled that a claim challenging a so-called "cut-down" procedure should be brought as a § 1983 action, consequently overruling Eleventh Circuit precedent which required such challenges to be raised in a federal habeas petition.  Then, in Hill v. McDonough, ---U.S.----, 126 S.Ct. 2096 (2006), the Supreme Court applied Nelson in ruling that method-of-execution claims should be raised in a § 1983 action. Despite courts allowing such challenges in a § 1983 action beginning in 2004 with the Nelson case, Williams did not raise his lethal-injection challenge years until April 10, 2007.  See Doc. 1.

In <u>Grayson</u>, the Court emphasized that the § 1983 challenge was filed with unjustifiable delay because it was filed after the conclusion of federal habeas review and in "the shadow of an execution date." <u>Grayson</u>, at *6. The same is true here. Williams filed his § 1983 action on April 10, 2007, several weeks after the United States Supreme Court denied certiorari review of the denial of Williams's federal habeas petition. <u>See</u> <u>Williams v. Alabama</u>, ---U.S.----, 2007 WL 879745 (Mar. 26, 2007). Williams offers no reasons why he did not raise his method-of-execution in an amended habeas petition or why he failed to raise his § 1983 action sooner. The timing of Williams's filing leads to no other conclusion than "[Williams] was primarily motivated by his impending execution and the foreclosure of all other avenues of relief." <u>Grayson</u> at *9. Just as the Court held in <u>Grayson</u>, this Court should likewise rule that Williams filed his challenge with unjustifiable delay.

Williams contends that the cases cited by <u>Grayson</u> to support the conclusion that he filed his lethal-injection with delay are all decisions where the claims were filed many years after the injuries occurred. Alabama law makes

clear however that laches is not fixed by a hard and fast limit of time, "but is a principle of good conscience dependent on the facts of each case." Woods v. Sanders, 247 Ala. 492, 496, 25 So. 2d 141, 144 (1946). Williams filed his lethal-injection challenge with delay because he could have filed it years sooner and he filed after the State sought his execution.

**B.  Inexcusable Delay**

As best we can tell, Williams offers four reasons why he delayed in filing his lethal-injection challenge: (1) such a challenge is not ripe until the conclusion of federal habeas review; (2) because other death-row inmates had filed lethal injection challenges, "it was entirely reasonable for Williams to wait to see whether the State would move for an execution date before filing this suit," Doc. 8 at 11; (3) § 1983 method-of-execution challenges were not available until after the Supreme Court's decision in Hill v. McDonough, 126 S.Ct. 2096 (2006); and (4) the unfixed nature of Alabama's execution protocol. See Doc. 8 at 10-12. Williams's reasons for delay have been previously addressed, thus the defendants incorporate those arguments here. See Doc. 15 at 14-26. The Grayson Court

also addressed many of these same issues, ruling that they did not offer legitimate reasons for the delay in filing. See Grayson at *6-9. This Court should rule, as the Grayson Court did, that the listed excuses do not justify the delay in filing and that Williams could have filed his claim sooner. Grayson at *7 (citing Jones v. Allen, --- F.3d----, 2007 WL 1225393, at *3 (11th Cir. Apr. 27, 2007).

## C. Undue Prejudice

The court in Grayson ruled that the third element of the doctrine of laches can be met "if the court believes that, under the circumstances, it is too late to ascertain the merits of the controversy." Grayson at *9 (quoting Ex parte Grubbs, 542 So. 2d 927, 929 (Ala. 1989)). Prejudice can also be established because the delay in filing "works a disadvantage to another." Hauser v. Foley & Co., 190 Ala. 437, 67 So. 252, 253 (Ala. 1914). Finally, "to bar an action, laches requires either delay with notice of the existence of a right that results in a disadvantage to another, or delay which effects a change in circumstances such that the controversy cannot be determined with reasonable accuracy." Grayson at *9 (quoting Jones v. Braggs, 637 So. 2d 1356, 1359 (Ala. Civ. App. 1994)).

The court in <u>Grayson</u> ruled that the delay in filing caused the defendants undue prejudice "on two fronts." <u>Grayson</u> at *9. First, at the conclusion of federal post-conviction review the State has an "added moral dimension" "in meting out a sentence of death in a timely manner." <u>Id.</u> (quoting <u>Calderon v. Thompson</u>, 523 U.S. 538, 556 (1998)). "To unsettle these expectations is to inflict a profound injury to the powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike." <u>Grayson</u> at *9 (quoting <u>Calderon</u>, 523 U.S. at 556)). Second, the defendants are prejudiced because the case must be placed on a "fast-track" in order to litigate it so that a stay of execution will not have to be granted. <u>Grayson</u> at *10.[3] Williams controlled when he filed his lawsuit and he chose to file it at a point when the courts and the parties have to expedite their schedules in order to litigate the late-filed claim. "Expedited litigation taxes the resources and schedules of the defendants." <u>Grayson</u> at *10. "Moreover,

---

[3] Although it is conceivably possible to reach a hearing on the merits without a stay of execution, it certainly is not possible to complete this litigation to conclusion, including all appeals, unless this Court stays Williams's execution.

expedited cases create future inefficiencies, including the specter of each inmate demanding late in the day the same consideration given to Grayson." Id. As the court held in Grayson, there will not be time to litigate this case before the scheduled execution date.

The defendants (and the State) are prejudiced when a death sentence that is duly-adjudicated cannot be carried out. The State has a legitimate expectation that it will be able to carry out a death sentence at the conclusion of federal habeas review. The Eleventh Circuit has recently repeated the State's expectation in being able to expeditiously carry out its duly-adjudicated judgment:

> It is common practice in Alabama for the State to seek an execution date soon after the Supreme Court denied certiorari review of an inmate's federal habeas petition. As a matter of common sense, completion of collateral review eliminates the last possible obstacle to execution, and Jones should have foreseen that the execution date would likely be set promptly upon completion of collateral review.

Jones at *3 n.2. See also Grayson at *9 (quoting Jones, 2007 WL 1225393, at *4)("We will not interfere with the State's strong interest in enforcing its judgment in this case."); (quoting Grayson, 460 F.3d at 1342("The government

11

has a strong interest in the finality of duly adjudicated criminal judgments."); (quoting Thompson v. Wainwright, 714 F.2d 1495, 1506 (11th Cir. 1983)("Each delay, for its span, is a commutation of a death sentence to one of imprisonment.")).

The State suffers undue prejudice based on the "change of circumstances" between the time Williams should have filed his lawsuit and the time he actually did. Grayson at *9. Williams should have filed his lethal-injection action years ago, during the heat of on-going litigation in which the State had no expectation that Williams's sentence would be carried out. But that day has long passed. Once Williams's federal habeas review ended, and his execution became imminent, the circumstances of this case changed; namely, the State gained a legitimate and legally recognized expectation that justice would finally be served. To allow Williams to frustrate the State's legitimate interest in carrying out its duly-adjudicated judgment works a serious disadvantage (and therefore prejudice) to the State.

Williams has not offered any legitimate reason for not filing his lethal-injection challenge sooner than April 2007. Recently, in Jones, the Eleventh Circuit commented at

12

length regarding when it is too late to file a lethal-injection challenge:

> We see no convincing reason why, after Alabama made lethal injection its primary method of execution, Jones could not have brought his method-of-execution challenge sooner than he did. Jones knew of the State's intention to execute him at least by July 2002. 'It was during that period – in which the execution was not so much an imminent or impending danger as it was an event reasonably likely to occur in the future – that [Jones] needed to file this challenge.' [citing Harris v. Johnson, 376 F.3d 414, 418 (11th Cir. 2004)]. By waiting until November 2006 to file his challenge to the State's lethal injection protocol, Jones 'leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out.' [Citing Judge Thompson's order].

Jones at *3. The Jones Court noted numerous similar lawsuits filed much earlier in various parts of the country as further evidence that Jones was on notice of his claim. Id. Williams filed his lethal-injection challenge five years after the State of Alabama made lethal injection its method of execution and two years after his federal habeas petition was denied. As in Jones, Williams could have filed his lethal-injection years sooner.

Williams's unjustifiable delay causes prejudice because his complaint, filed at the conclusion of federal habeas review, cannot be resolved on the merits without the entry of a stay of execution.    As Judge Thompson recently recognized in Jones, this is not the type of case that can be squeezed into a few months, but instead will add years to the delay:

> Jones maintains that this case can be resolved in this court on the merits within two to three months.  The court finds such an assertion dubious.  First, if the court were to find in favor of Jones on the merits, fashioning relief (that is, reviewing the State's adoption of a new protocol for lethal injection) would take much more than three months. Second, regardless of whether Jones prevailed or not, an appeal would be certain and would add months, if not years, to this litigation.  As a result, the State would be looking at one or more years, beyond the 28 years that have already passed, before it could carry out its judgment of execution.

Jones, 2007 WL 1140416, *10.  The Eleventh Circuit agreed with Judge Thompson's assessment:

> Waiting to file suit until the Supreme Court has denied certiorari review of an inmate's federal habeas petition, or, as Jones did, waiting until a petition for certiorari has been pending for over three months, is simply too late to avoid the inevitable need for a stay of execution.  See Harris v. Johnson, 376

14

> F.3d 414, 417 (5th Cir. 2004)("The brief
> window of time between the denial of
> certiorari and the state's chosen
> execution date … is an insufficient
> period in which to serve a complaint,
> conduct discovery, depose experts, and
> litigate the issue on the merits.").  The
> district court made a factual finding
> that adjudicating Jones's claim in the
> trial court would take "much more than
> three months" and that a subsequent
> appeal "would add months, if not years,
> to this litigation." Jones, slip op. at
> 37.  We agree and thus cannot say that
> Jones's suit was filed in time to allow
> full adjudication without the need for a
> stay of execution.

Jones, n.2.  The Court noted further:

> If this court were to grant the motion to
> stay to allow Jones to proceed on his §
> 1983 challenge in district court, the
> implementation of the State's judgment
> would be delayed many months, if not
> years.  Jones, in essence, would receive
> a reprieve from his judgment. See
> Thompson v. Wainwright, 714 F.2d 1495,
> 1506 (11th Cir. 1983)(observing that
> "[e]ach delay, for its span, is a
> commutation of a death sentence to one of
> imprisonment").  The State and the
> surviving victims have waited long enough
> for some closure to these heinous crimes.
> We will not interfere with the State's
> strong interest in enforcing its judgment
> in this case.

Jones at *4.  Likewise, the court in Grayson, in rejecting

the inmate's argument that the case could be litigated in

several months, emphasized that the inmate had agreed "to a

15

fifteen month litigation schedule in the first Rule 26(f) report of the parties." <u>Grayson</u> at *10.

Williams filed his complaint on April 10, 2007, and just as in <u>Jones</u> and <u>Grayson</u>, it is not possible to litigate this case by the scheduled execution on August 23, 2007. Just as in Grayson, the defendants are prejudiced by the "fast-track" litigation that would have take place to litigate Williams's late-filed claim before his scheduled execution. Just as in <u>Jones</u> and <u>Grayson</u>, this case cannot be litigated without having to grant a stay of execution.

Williams's unjustifiable delay also causes prejudice to the defendants because the timing of his filing leads to the conclusion that his primary purpose for filing his lawsuit is to forestall his execution. The Eleventh Circuit, in a similar situation ruled that: "[b]y waiting until November 2006 to file his challenge to the State's lethal injection protocol, Jones 'leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out.'" <u>Jones</u> at *3 (quoting Judge Thompson's decision in <u>Jones</u>). If Williams were truly interested in challenging Alabama's method of execution, he would have

16

filed his lawsuit so that it could be litigated without the entry of a stay or without the time pressures presented by his delay. By filing his § 1983 action when he did, Williams must believe he is entitled to what amounts to a fourth layer of appeal.

Williams most likely filed his late-filed claim because he is following the examples of other § 1983 death-row inmates who filed at the conclusion of habeas review and successfully forestalled their executions. One of those individuals, Danny Bradley, filed a § 1983 action on June 26, 2001, at the conclusion of his federal post-conviction appeals seeking DNA testing. See Bradley v. Nagle, 2:01-cv-01601-SLB (N.D. Ala.) After that complaint was dismissed, the Eleventh Circuit reversed – ruling that claims seeking post-conviction access to biological evidence for DNA testing purposes may be brought as a § 1983 action. Bradly v. Pryor, 305 F.3d 1287, 1290 (11th Cir. 2002). The federal district court recently entered a memorandum opinion denying relief and consequently dismissing the lawsuit. Bradley v. Nagle, 2:01-cv-01601-SLB (N. D. Ala. March 29, 2007). Not surprisingly, Bradley has filed a notice of appeal.

There are two more examples of Alabama death-row inmates who have successfully prevented their executions by filing § 1983 actions at the conclusion of federal habeas review. Darrell Grayson filed a § 1983 action on November 15, 2002, requesting DNA testing. Grayson v. Pryor, CV-02-BE-2800-S. Grayson's lawsuit was dismissed by the federal district court and rejected on appeal by the Eleventh Circuit and Supreme Court. See Grayson v. King, 460 F.3d 1328 (11th Cir. 2006), cert. denied, Grayson v. King, 127 S.Ct. 1005 (Jan. 8, 2007).[4] David Larry Nelson filed a complaint on October 6, 2003, alleging that Alabama's possible use of a so-called cut-down procedure was unconstitutional. Nelson v. Campbell, 2:03-cv-1008-MHT (M.D. Ala.). The Supreme Court ultimately reversed the lower courts, ruling that Nelson could challenge Alabama's use of a so-called "cut-down" procedure in a § 1983 action. See Nelson v. Campbell, 541 U.S. 637, 124 S.Ct. 2117 (2004). The case was subsequently remanded to the federal district court where it languishes to this day.

---

[4] Grayson recently filed yet another § 1983 action alleging Alabama's method-of-execution is unconstitutional. See Grayson v. Allen, 2:06-cv-1032-WKW, 2007 WL 1491009 (M.D. Ala. May 21, 2007).

Thus, these examples demonstrate that the defendants (and the State) suffer prejudice from Williams's unjustifiable delay in filing. Williams is presumably aware that other death-row inmates have filed § 1983 actions at the conclusion of federal habeas review and successfully forestalled their executions. As previously stated, the Eleventh Circuit has ruled that this type of challenge has been available since 2002 and denied a stay of execution because, inter alia, the inmate could have filed his lethal-injection challenge sooner. Jones at n. 2. Equally important, here, is the fact that a § 1983 and habeas corpus are mutually exclusive causes of action, thus there is no impediment to filing even though state or federal appeals are actively being pursued.[5] See Nelson v. Campbell, 541 U.S. 637, 643 (2004); Hutcherson v. Riley, 468 F.3d 750, 754 (11th Cir. 2006). That is, issues that are not cognizable in habeas corpus are cognizable under § 1983. Hence, there is no legitimate reason for Williams to have waited until his federal habeas appeals concluded before filing the

---

[5] Williams's contention that "the existence of Williams's § 1983 claims was entirely contingent upon the outcome of his petition for habeas relief," see Doc. 8 at 11, is inaccurate. Williams's § 1983 claim has nothing to do with and is completely independent from the claims in his habeas petition.

instant action.  That he chose to do so reveals his primary

motive, which is to prevent his execution from happening.

    *    *    *    *    *    *    *    *    *    *    *

Wherefore, for the foregoing reasons, the defendants'

motion to dismiss is due to be granted.

Respectfully submitted,

TROY KING
ALABAMA ATTORNEY GENERAL


/s/  J. CLAYTON CRENSHAW
J. Clayton Crenshaw  (CRE007)
James W. Davis  (DAV103)
Assistant Attorney General

OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7300 Office
(334) 353-8440 Fax

## CERTIFICATE OF SERVICE

This is to certify that on the 24th day of May, 2007, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will electronically send a copy of the same to the following: **Joel L. Sogol**.

I also served a copy of the foregoing document on the following attorney by placing a copy of the same in the United States mail, first class postage prepaid and addressed as follows:

```
Christopher H. Little
LITTLE MEDEIROS KINDER BULMAN
& WHITNEY, P.C.
72 Pine Street
Providence, RI  02903
```

/s/  J. CLAYTON CRENSHAW
J. Clayton Crenshaw
Assistant Attorney General

OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7300 Office
(334) 353-8440 Fax
Email: ccrenshaw@ago.state.al.us
        jimdavis@ago.state.al.us