IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LUTHER JEROME WILLIAMS,       )
                              )
    Plaintiff,                )
                              )
v.                            )  No. 2:07-cv-307-MEF
                              )
RICHARD ALLEN, et al.,        )
                              )
    Defendants.               )

**DEFENDANTS'S OPPOSITION TO PLAINTIFF'S MOTION FOR A
TEMPORARY STAY OF EXECUTION**

Williams seeks a stay of execution even though he
delayed inexcusably in filing his § 1983 action alleging
lethal injection as applied in Alabama is unconstitutional.
See Doc. 1. Other judges in this district have been
presented with similarly situated cases and rejected the
requested stay. In one of those cases, Judge Thompson
stated that "Jones could have avoided this scenario by
filing this lawsuit shortly after Alabama allowed lethal
injection as a means of execution." Jones v. Allen, 483
F.Supp.2d 1142, 1152 (M.D. Ala. Apr. 17, 2007). In
affirming that ruling, the Eleventh Circuit held that "by
waiting until November 2006 to file his challenge to the
State's lethal injection protocol, Jones leaves little
doubt that the real purpose behind his claim is to seek a

delay of his execution, not merely to effect an alteration of the manner in which it is carried out." <u>Jones v. Allen</u>, 485 F.3d 635, 640 (11th Cir. Apr. 27, 2007), <u>cert.</u> <u>denied</u>, <u>Jones v. Allen</u>, __ U.S. __, 127 S.Ct. 2160 (May 3, 2007). Even more recently, Judge Watkins ruled that "[b]ecause Grayson has delayed unreasonably in seeking relief, the court <u>must</u> <u>apply</u> the strong equitable presumption against a stay." <u>Grayson v. Allen</u>, 2007 WL 1491009, *13 (May 21, 2007)(emphasis in original).

Both of these cases applied Supreme Court precedent in rejecting a stay of execution. "Before granting a stay, a district court must consider not only the likelihood of success on the merits and relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim." <u>Nelson v. Campbell</u>, 541 U.S. 637, 649-50, 124 S.Ct. 2117, 2125-26 (2004). The State's strong interest in meting out a sentence of death in a timely manner acquires "an added moral dimension" when state and federal post-trial proceedings have run their course. <u>See</u> <u>Calderon v. Thompson</u>, 523 U.S. 538, 556, 118 S.Ct. 1489, 1501 (1998). This Court should likewise follow

this precedent and reject Williams's request for a stay because he unjustifiably delayed in filing it.

## I.  CHRONOLOGICAL HISTORY OF WILLIAMS'S § 1983 ACTION

On April 10, 2007, Williams filed a § 1983 action alleging that Alabama's execution procedures are unconstitutional under the Eighth and Fourteenth Amendments. See Doc. 1. Williams filed his complaint almost five years after his sentence changed by operation of law to lethal injection. See Ala. Code § 15-18-82.1 (1975 Code)(Alabama law establishing lethal injection as the primary form of execution became effective on July 1, 2002). His complaint was filed at the conclusion of his federal habeas proceeding, see Williams v. Allen, __ U.S. __, 127 S.Ct. 1874 (Mar. 26, 2007), and after the State moved for the Alabama Supreme Court to set an execution date, see Doc. 6, Ex. 1.

The defendants have moved to dismiss Williams's action on statute-of-limitations and laches grounds. See Doc. 6. Williams filed a brief which made two arguments opposing the defendants's motion to dismiss. See Doc. 8. First, relying on Jones v. Allen, 483 F.Supp.2d 1142 (M.D. Ala. 2007), Williams argued that the statute of limitations does

not bar his § 1983 action.    See Doc. 8 at 1-3.    Second,

Williams contended his § 1983 action was not barred by

laches because the defendants could not establish any of

the required elements.    See Doc. 8 at 9-13.

On May 24, 2007, the defendants gave notice to this

Court that the Alabama Supreme Court had set Williams's

execution for August 23, 2007.    See Doc. 12.    That notice

included a copy of the Alabama Supreme Court's order that

had been entered on May 21, 2007.    See Doc. 12.

On May 29, 2007, Williams filed a supplemental brief

addressing the recent memorandum opinion in Grayson v.

Allen, 2007 WL 1491009 (M.D. Ala. May 21, 2007)(Slip Copy),

that dismissed a virtually identical lethal-injection

challenge on laches grounds.    See Doc. 14.    The defendants,

also on May 29, 2007, filed a reply brief supporting their

motion to dismiss on statute-on-limitations grounds.    See

Doc. 15.    On June 5, 2007, the defendants, in reply to

Williams's supplemental brief, emphasized that this Court

should follow Grayson and dismiss Williams's complaint on

laches grounds.    See Doc. 18.

On June 7, 2007, this Court entered an order directing

that Williams file a supplemental brief "addressing the

legal principles set forth in the following cases: <u>Hill v. McDonough</u>, 126 S.Ct. 2096, 2104 (2006); <u>Nelson v. Campbell</u>, 541 U.S. 637, 649-50 (2004); <u>Jones v. Allen</u>, 485 F.3d 635 (11th Cir. 2007); <u>Diaz v. McDonough</u>, 472 F.3d 849 (11th Cir. 2006); <u>Rutherford v. McDonough</u>, 466 F.3d 970 (11th Cir. 2006)." Doc. 19. This Court also directed the defendants to file any opposition to Williams's request for a temporary stay of execution no later than June 29, 2007. <u>Id.</u> On June 15, 2007, Williams filed a supplemental brief in support of his motion for a temporary stay. See Doc. 20.

## II. COURTS APPLY THE BALANCE OF THE EQUITIES STANDARD ARTICULATED IN <u>NELSON</u> AND <u>HILL</u> EVEN IF AN INMATE REQUESTS A STAY PURSUANT TO THE ALL WRITS ACT

This Court directed Williams to address the legal principles stated in numerous Supreme Court and Eleventh Circuit cases because those cases "specifically address the requirements which must be satisfied for a stay of execution to be appropriate." Doc. 19 (listing five cases). However, Williams's supplemental brief addresses only one of the mentioned cases, see <u>Diaz v. McDonough</u>, 472 F.3d 849 (11th Cir. 2006), contending that that case was the only one, out of the cases cited by this Court, to

address a requested injunction under the All Writs Act. See Doc. 20 at 2-3. Williams acknowledges that the Eleventh Circuit denied the requested injunction in <u>Diaz</u> but contends, as best we can tell, that the Court's analysis is distinguishable because Diaz filed a lethal-injection challenge 17 years after his execution had originally been set in 1989. See Doc. 20 at 2-3. As the following demonstrates, <u>Diaz</u> is not distinguishable from this case and it offers binding precedent to deny the stay.

Although Diaz requested an injunction under the All Writs Act, the <u>Diaz</u> Court applied the balance of the equities standard articulated in <u>Nelson</u> and <u>Hill</u>. <u>Diaz</u>, 472 F.3d at 850-51 (quoting <u>Hill v. McDonough</u>, 126 S.Ct. at 2104). Specifically, "a court considering a stay must also apply a strong equitable presumption against the grant of a stay where a claim could have been brought at such time as to allow consideration of the merits without requiring entry of a stay." <u>Diaz</u>, 472 F.3d at 850 (quoting <u>Hill</u>, 126 S.Ct. at 2104); see also <u>Nelson v. Campbell</u>, 541 U.S. 637, 650, 124 S.Ct. 2117, 2125 (2004)("Given the State's significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant

of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.")(internal citation omitted). In ruling that the balance of the equities tilted against Diaz, the Court noted that "Diaz was either aware or should have been aware of the grounds for his section 1983 claim much earlier than the date on which he filed his complaint." Diaz, 472 F.3d at 851. The Diaz Court emphasized that lethal-injection challenges had been filed "as early as 2000" thus Diaz had notice of the grounds of such a claim six years before he actually filed his suit. Id. (citing Sims v. State, 754 So. 2d 657, 666-68 (Fla. 2000)).

Contrary to Williams's assertion, the decision in Diaz in no way relies on the fact that Diaz filed a lethal-injection challenge 17 years after the setting of Diaz's original execution.[1]    Indeed, the Diaz Court does not mention any of the case's procedural history in its analysis of the equities. See Diaz, 472 F.3d at 851. Moreover, Diaz's original execution appears to have been

---

[1] Because Florida changed its method of execution to lethal injection in 2000, see Sims v. State, 754 So. 2d 657, 663 n.12 (Fla. 2000), Diaz could not have filed a challenge to lethal injection before 2000.

set after his direct appeal and an automatic stay granted to allow Diaz to pursue state and federal post-conviction appeals. See Diaz v. State of Florida, 945 So. 2d 1136, 1140 (Fla. 2006). Thus, there is nothing at all significant about the setting of Diaz's original execution in 1989. The Diaz Court rejected the requested injunction, just as this Court should, because Diaz brought his lethal-injection challenge too late.

The Eleventh Circuit rejected another requested injunction under the All Writs Act because that inmate filed his lethal-injection challenge too late. See Hill v. McDonough, 464 F.3d 1256 (11th Cir. 2006). The Court ruled that Hill was "aware of the ground for the claim much earlier than the date on which he actually filed his § 1983 action in federal district court." Hill, 464 F.3d at 1259. By filing too late, "Hill was the architect of the very trap from which he now seeks relief." Id. Thus, the Hill Court denied the stay of execution requested under the All Writs Act.

Diaz and Hill make clear that, even if an inmate requests a stay pursuant to the All Writs Act, courts apply the balance of the equities standard articulated in Nelson

and Hill. Specifically, in Diaz the Court stated "[b]ecause we find that the equities do not support Diaz's request, we decline to grant an injunction. Diaz, 472 F.3d at 851. In Hill, the Court stated "we consider Hill's motion for injunction relief anew, but with the clear indication from the Supreme Court in this case that we may deny Hill's request if the equities demand that result." Hill, 464 F.3d at 1258. Likewise, the Sixth Circuit in Cooey v. Strickland, 484 F.3d 424, 425 (6th Cir. Apr. 23, 2007) applied the balance of the equities standard in denying a motion for stay of execution requested under the All Writs Act. Because the balance of the equities standard applies here, the defendants now turn to the issue whether Williams is entitled to a stay of execution.

## III. WILLIAMS IS NOT ENTITLED TO A STAY BECAUSE HE FAILED TO DILIGENTLY PURSUE HIS CAUSE OF ACTION IN A TIMELY MANNER

The United States Supreme Court instructed in Hill that "[a] court considering a stay of execution must … apply a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." Hill, 126 S.Ct. at 2104 (internal quotation

and citation omitted); see also Nelson v. Campbell, 541 U.S. 637, 650, 124 S.Ct. 2117, 2125 (2004)("Given the State's significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.")(internal citation omitted). As shown below, the State is entitled to this strong presumption against a stay here, because Williams could have brought this claim at such a time as to allow consideration of the merits without requiring the entry of a stay.

**A. This Case Cannot Be Fully Considered Unless There Is a Stay of Execution, Thus Williams Is Not Entitled To A Stay**

The Eleventh Circuit has consistently denied requests for stays of execution when inmates could have brought claims in time to permit full consideration without any need to stay their executions. Jones v. Allen, 485 F.3d 635, (11th Cir. Apr. 27, 2007); Hill v. McDonough, 464 F.3d 1256, 1258-59(11th Cir. 2006); Rutherford v. McDonough, 466 F.3d 970, 973-74 (11th Cir. 2006); Diaz v. McDonough, 472 F.3d 849, 850-51 (11th Cir. 2006). This is such a case.

No matter what accommodations are made to Williams to expedite his claim, the case cannot realistically be completed before his August 23, 2007 execution date.

That said, even if this Court can rule on the merits before the execution date, the case will not (by a long-shot) be over when this Court rules. One party or the other will have the opportunity to appeal, and it is unimaginable that this Court's order will not be followed by an appeal to the Eleventh Circuit and a petition for writ of certiorari to the United States Supreme Court.

As Judge Thompson recognized in Jones v. Allen, this simply is not the type of case that can be squeezed into a few months:

> Jones maintains that this case can be resolved in this court on the merits within two to three months. The court finds such an assertion dubious. First, if the court were to find in favor of Jones on the merits, fashioning relief (that is, reviewing the State's adoption of a new protocol for lethal injection) would take much more than three months. Second, regardless of whether Jones prevailed or not, an appeal would be certain and would add months, if not years, to this litigation. As a result, the State would be looking at one or more years, beyond the 28 years that have already passed, before it could carry out its judgment of execution.

Jones v. Allen, 483 F.Supp.2d 1142, 1152 (M.D. Ala. Apr. 17, 2007). In affirming Judge Thompson's denial of Jones's stay request, the Eleventh Circuit expressly "agree[d]" with Judge Thompson's assessment of the temporal practicalities:

> The district court made a factual finding that adjudicating Jones's claim in the trial would take 'much more than three months' and that a subsequent appeal 'would add months, if not years, to this litigation.' Jones, 2007 WL 1140416. We agree and thus cannot say that Jones's suit was filed in time to allow full adjudication without the need for a stay of execution.

Jones v. Allen, 485 F.3d 635, 639 n.2 (11th Cir. Apr. 27, 2007).

Thus, under Nelson, Hill, Jones, Rutherford, and Diaz, Williams's request for a motion for stay should be denied.

**B.  Williams Did Not Diligently Pursue His § 1983 Cause of Action as Demonstrated by the Fact That It Is Barred Under the Statute of Limitations and the Doctrine of Laches**

Williams filed his complaint under § 1983 alleging that lethal injection, as presently administered, is unconstitutional under the Eighth and Fourteenth Amendments. Doc. 1 at 1. The complaint was filed on April 10, 2007, several weeks after his federal habeas appeals

were denied.  Williams v. Alabama, __U.S.__, 127 S.Ct. 1874 (March 26, 2007).  As demonstrated in the defendants's motions requesting dismissal based upon the statute of limitations, Williams's cause of action accrued when Alabama on July 1, 2002, changed its method of execution to lethal injection.  See Docs. 6, 15, and 17.  Williams's claim is also time-barred under the doctrine of laches. See id.  The defendants incorporate by reference Docs. 6, 15, and 17, and all of the exhibits attached to those documents.

The complaint does not contain any statements regarding why Williams waited to file this § 1983 lawsuit four years after his federal habeas challenge concluded.  The complaint itself does not contain any language that indicates that Williams is relying on newly discovered information or evidence.  In fact, the complaint appears to be a "cookie-cutter" pleading that could have been filed years before.

In conclusion, this Court should deny Williams's motion to stay the execution on the grounds that the lethal-injection challenge is time-barred under the statute of limitations and/or under the doctrine of laches.

13

C. **The Balance of the Equities Tilts Against Williams Because He Could Have Raised His Lethal-Injection Challenge Before the Supreme Court Decided Hill v. McDonough**

Williams contends that it was not possible to raise a lethal injection in the Eleventh Circuit until June 12, 2006, the date of the United States Supreme Court's decision in Hill. Williams apparently offers this as an excuse for his dilatory filing. It is true that in Hill v. McDonough, __ U.S. __, 126 S.Ct. 2096 (2004), the Supreme Court ruled that a claim challenging a method of execution could be raised in a § 1983 lawsuit rather than in a habeas petition. Williams is most certainly wrong on his overall point, namely, that the challenge itself could not have been filed before Hill was decided. The plaintiff inmate in Hill filed such a challenge even though circuit precedent mandated that such actions should be raised in a habeas petition. See Hill v. Crosby, 437 F.3d 1084, 1085 (11th Cir. 2006). Thus, Williams was not prohibited from filing a § 1983 action before Hill was decided. Williams, that is, could have been Hill.

In Cooey v. Strickland, 479 F.3d 412 (6th Cir. 2007), the Court dealt with and rejected a similar argument. The plaintiff inmate in Cooey contended that the statute of

limitations had not accrued until the Supreme Court's decision in Nelson v. Campbell, 541 U.S. 637, 641, 124 S.Ct. 2117, 2123 (2004), which ruled that a § 1983 action was the appropriate vehicle for an inmate challenging the proposed use of a "cut-down" procedure. The plaintiff inmate made the further argument that he was "precluded" from filing a § 1983 challenge before Nelson was decided. In rejecting that argument, the Cooey Court stated that "the plaintiff in Nelson was similarly barred by circuit precedent at the time he filed his suit. So long as there remains the possibility of en banc reconsideration and Supreme Court review, circuit law does not completely foreclose all avenues for relief." Cooey, 479 F.3d at 422 (quoting Harris v. Johnson, 376 F.3d 414, 418-19 (5th Cir. 2004)).

In another lethal-injection challenge filed in this district, United States District Judge Keith Watkins rejected a similar claim. See Grayson v. Allen, No. 2:06-cv-1032-WKW, 2007 WL 1491009 (M.D. Ala. May 21, 2007)(Slip Copy). Judge Watkins stated as follows:

> Grayson's argument that § 1983 method-of-execution challenges were not available until after the Supreme Court's decision in Hill is unpersuasive. The history of method-of-execution litigation suggests that one should not risk the

15

outcome Grayson now faces.  In May 2004,
Nelson opened the door to § 1983 actions
challenging lethal injection.  [Footnote
omitted.]   Hill seized the opportunity
first, but the opportunity was open to
all, including Grayson.  See Rutherford
v. Crosby, 438 F.3d 1087, 1092 (11th Cir.
2006)("Yet Hill filed the lawsuit without
any grant of certiorari on the issue.
Rutherford could have done exactly the
same thing."), vacated on other grounds,
Rutherford v. McDonough, ---U.S.----, 126
S.Ct. 2915 (2006)(mem.).  Certiorari was
granted in Hill on January 25, 2006, and
the opinion was published on June 12,
2006, nearly 30 months after Nelson was
published, over ten months after
certiorari was granted in Hill, and over
five months after the law was changed in
Hill.  These are windows of time, if used
wisely by Grayson, could have avoided the
current dilemma.   If Grayson faces a
risk, it is a risk he assumed by unwisely
sleeping on his rights.

Grayson, at *7.  This Court should likewise reject any

contention that the delay in filing was due to the claim not

being available until the release of the Supreme Court's

decision in Hill.

Moreover, Williams could have amended his habeas

petition in 2002 when Alabama adopted lethal injection as

the method of execution.  He did not even try.

In conclusion, for the foregoing reasons, Williams is

thus wrong when he contends he was prohibited from raising

a lethal-injection challenge in a § 1983 before Hill was

decided.    Accordingly,  his  request  for  a  stay  for  that
reason should be denied.

**D.    The "Cookie-Cutter" Complaint Filed by Williams
        Was Available, In Its Presently Filed Form, As Far
        Back as 2000**

Williams's complaint  is  remarkably  similar  to  another
lethal-injection  challenge  considered  by  the  Florida
Supreme  Court  in  2000.   See  Sims v. State,  754 So. 2d 657,
667-68  (Fla.  2000)(addressing  allegations  regarding  the
drugs  used  in  lethal  injections  and  the  alleged  lack  of
training  of  the  execution  team).   Considering  the  lack  of
specificity  in  Williams's  complaint,  and  its  similarity  to
complaints  filed  throughout  the  country  in  the  previous  six
years,  Williams  could  have  easily  filed  this § 1983  action
within  the  statute  of  limitations  and  at  a  time  where  this
issue  could  have  been  litigated  without  the  need  to  seek  a
stay  of  execution.   As  noted  in  Harris,  "Harris  knew  of  the
state's  intention  to  execute  him  in  this  manner.   It  was
during  that  period - in  which  the  execution  was  not  so  much
an  imminent  or  impending  danger  as  it  was  an  event
reasonably  likely  to  occur  in  the  future - that  he  needed
to  file  his  challenge."   Harris, 376 F.3d at 418.

IV. **THE EXCUSES THAT WILLIAMS GIVES FOR NOT BEING ABLE TO RAISE HIS LETHAL-INJECTION CHALLENGE SOONER HAVE BEEN REJECTED BY THE ELEVENTH CIRCUIT AND BY OTHER JUDGES IN THIS DISTRICT**

Williams offers various excuses to justify his delay in filing his method-of-execution challenge. All of these reasons have been rejected by the Eleventh Circuit or by other judges in this district.

A. **The Eleventh Circuit Has Flatly Rejected The Contention That Method-of-Execution Challenges Are Ripe Only After The Conclusion of Federal Habeas Review**

As previously stated in the defendants's motion to dismiss, Williams filed his § 1983 challenge with unjustifiable delay by filing it two weeks after the conclusion of his federal habeas review. See Doc. 6 at 3-4 (setting forth summary timeline of relevant events). Williams, in conclusory fashion, states that he delayed filing his § 1983 lethal-injection until the conclusion of federal habeas review because his lawsuit was not ripe until that moment. Doc. 20 at 3-4. However, when Williams filed his petition for writ of certiorari in the United States Supreme Court on December 11, 2006, it should have been clear to him that a denial of the petition would remove the final obstacle to a lifting of the state-court

automatic stay of execution. <u>See</u> <u>Alabama</u> <u>Rules</u> <u>of</u> <u>Appellate</u> <u>Procedure</u>, Rule 8(d)(1). It should have been equally clear that once the Alabama Supreme Court lifted the stay, Williams might have as few as 31 days before the date of execution. <u>Id.</u> (requiring the date of execution to be "not less than 30 days" from the date of the order setting for the execution date). At the time Williams filed his petition for certiorari, therefore, he should have been aware, at the very least, that the likely execution of his sentence was rapidly approaching. Instead of diligently filing a manner of execution claim, Williams waited an additional four months to file suit.

Williams's contention that his lethal-injection challenge is premature and unripe until the conclusion of federal habeas review is easily rejected. Because a § 1983 lawsuit and federal habeas corpus petition are mutually exclusive causes of action, there is no impediment to filing a § 1983 action while state or federal appeals are actively being pursued. <u>See</u> <u>Nelson v. Campbell</u>, 541 U.S. 637, 643 (2004); <u>Hutcherson v. Riley</u>, 468 F.3d 750, 754 (11th Cir. Oct. 24, 2006). Issues that are not cognizable

in habeas corpus are cognizable under § 1983. Parallel
litigation thus poses no difficulty.

In the context of addressing a recent application for a
stay of execution, the Eleventh Circuit responded to the
situation presented by inmates who choose to file their
lethal-injection challenges only at the conclusion of
federal habeas review. Jones v. Allen, 485 F.3d 635, (11th
Cir. Apr. 27, 2007). The Eleventh Circuit concluded, among
other things, that such a strategy is a risky one that can
result in a stay of execution being denied because there is
not sufficient time to consider the § 1983 lawsuit:

> We agree with the district court's
> finding of fact that one of the most
> naturally foreseeable risks facing an
> inmate who waits to file his method-of-
> execution challenge until many months
> after his federal habeas petition has
> been denied on appeal is that an
> execution date will be set during the
> pendency of the proceedings, thus
> necessitating the entry of a stay if full
> adjudication and an appeal are to be had.
> This risk is particularly foreseeable in
> Alabama, where the Alabama Supreme Court
> is authorized to enter an order fixing an
> inmate's date of execution 'at the
> appropriate time.' Ala. R. App. P.
> 8(d)('The supreme court shall at the
> appropriate time enter an order fixing a
> date of execution.' (emphasis added in
> Jones) It is common practice in Alabama
> for the State to seek an execution date
> soon after the Supreme Court denied

*certiorari* review of an inmate's federal habeas petition. As a matter of common sense, completion of collateral review eliminates the last possible obstacle to execution, and Jones should have foreseen that the execution date would likely be set promptly upon completion of collateral review.

\*    \*    \*    \*    \*    \*    \*    \*    \*

Waiting to file suit until the Supreme Court has denied *certiorari* review of an inmate's federal habeas petition, or, as Jones did, waiting until a petition for *certiorari* has been pending for over three months, is simply too late to avoid the inevitable need for a stay of execution. <u>See</u> <u>Harris v. Johnson</u>, 376 F.3d 414, 417 (5th Cir. 2004)("The brief window of time between the denial of certiorari and the state's chosen execution date … is an insufficient period in which to serve a complaint, conduct discovery, depose experts, and litigate the issue on the merits.").

\*    \*    \*    \*    \*    \*    \*    \*    \*

Jones says that he did not pursue his method-of-execution claim any earlier than November 2006 because it was not ripe for consideration before that time. Jones argues that ripeness occurred only when there was a 'strong possibility' that he 'actually faced execution' by lethal injection. We need not determine with specificity when Jones's claim became ripe. <u>But</u> <u>see</u> <u>Gomez v. U.S. Dist. Ct. for N.D. Cal.</u>, 503 U.S. 653, 654, 112 S.Ct. 1652, 1653, 118 L.Ed. 2d 293 (1992)("This claim [a challenge to lethal injection] could have been brought more

than a decade ago.'). However, we can
say in any event that, even under Jones's
definition of ripeness, there was far
more than a 'strong possibility' that
Jones would be put to death by lethal
injection by January 2006 (when we denied
relief on Jones's habeas petition). See
Harris, 376 F.3d at 418 (requiring
method-of-execution claim to be pursued
even when death by lethal injection is
merely 'an event reasonably likely to
occur in the future")(emphasis in
original). Indeed, by January 2006,
given the extremely small chance of
securing *certiorari* review in the Supreme
Court, it was all but guaranteed that
Jones would die by lethal injection. Yet
Jones has offered no reason at all for
his decision to wait nearly ten
additional months to file this suit.

Jones, at 639 n.2. Thus, as demonstrated above, Williams's
contention that his claim is premature or unripe because of
his pending federal habeas appeal has been flatly rejected
by the Eleventh Circuit.

Furthermore, Williams's contention here ignores that
"[b]oth the State and the victims of crime have an
important interest in the timely enforcement of a
sentence." Hill, 126 S.Ct. at 2104. In other words, after
a death-row inmate has exhausted his appeals and his
sentence has been duly adjudicated, it is then the
appropriate time for the State to position itself to carry
out that judgment. Thus, the State of Alabama here moved

the Alabama Supreme Court to set Williams's execution date as soon as possible after the conclusion of Williams's federal habeas appeals, when the automatic-stay provisions under Rule 8 of the Alabama Rules of Appellate Procedure no longer applied to Jones.  See Ala. R. App. P. 8(d) (Stays in Criminal Cases").

The following cases, which denied stays because the inmate filed his lethal-injection lawsuit too late, have held likewise concerning inmates who file § 1983 actions long after they could have originally been brought.  See Hicks v. Taft, 431 F.3d 916, 916-917 (6th Cir. 2005) (rejecting motion for stay of execution in § 1983 lethal injection challenge where action was filed on the "eve of execution" and discussing Dennis v. Taft, where stay was denied even though the § 1983 was filed four months prior to the scheduled execution date); Harris v. Johnson, 376 F.3d 414 (5th Cir. 2004) (stay denied in § 1983 case filed ten weeks before scheduled execution date).  These decisions do not necessarily turn on the fact of the exact moment that a § 1983 action becomes ripe; instead they uniformly turn on whether the inmate could have brought the suit at an earlier time, far removed from when the State

could have sought an execution date. See e.g., Rutherford, 466 F.3d at 974-976; Hill, 464 F.3d at 1259 ("[T]he fact remains that, during the pendency of his various collateral challenges, Florida had considered the same type of claim upon which Hill now seeks relief. In light of this context, Hill cannot claim that it was impossible for him to initiate his federal suit any earlier."); Harris, 376 F.3d at 418 ("For the entirety of his eighteen years on death row, Harris knew of the state's intention to execute him in this manner. It was during that period-in which the execution was not so much an imminent or impending danger as it was an event reasonably likely to occur in the future-that he needed to file his challenge. By waiting as long as he did, Harris leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out."). Because Williams has wholly failed to show that he could not have brought this suit earlier, his conclusory argument that he delayed filing because his lawsuit was premature or unripe is easily rejected.

**B.    Williams' Assertion That He Could Not Have Raised His Lethal-Injection Challenge Until the Supreme Court's Decision In <u>Hill</u> Is Wrong**

Williams contends that it was not possible to raise a lethal injection in the Eleventh Circuit until June 12, 2006, the date of the United States Supreme Court's decision in <u>Hill</u>.  The defendants have addressed this argument, see supra at 14-17 and will not replow that ground here.  As previously stated, Williams is wrong on his overall point, namely, that the challenge itself could not have been filed before <u>Hill</u> was decided.

**C.    Williams' Unjustifiable Delay Cannot Be Blamed On Any Change To Alabama's Execution Protocol**

Williams finally contends that he delayed the filing of his lethal-injection challenges because Alabama's execution procedures have changed over time.  The Eleventh Circuit rejected a similar argument in evaluating the complaint filed in <u>Jones</u> which is virtually identical to the complaint filed by Williams.  <u>Jones</u>, 485 F.3d at 640 n.3.  The <u>Jones</u> Court ruled that any changes to the execution protocol offered no justifiable excuse for delay especially when the crux of the complaint centered on the three-drug cocktail, which is used by virtually every other state that carries out executions.  <u>Id.</u>  In other words,

"[Williams] either was or should have been aware of the risks involved and the potential challenge to the lethal injection procedure well before he filed suit." Id. This Court should likewise reject Williams assertion that he delayed in filing his lawsuit due to any alleged change in Alabama's execution procedures.

### D. The Supreme Court's Doctrine of "Evolving Standards of Decency" Does Not Excuse Williams's Unjustifiable Delay

William next contends he delayed filing his lethal-injection challenge because of the "evolving standards of decency" applicable to Eighth Amendment challenges. Doc. 20 at 4. But Williams has not cited to any compelling authority that indicates "evolving standards of decency" are shifting against the traditional three-drug cocktail. In Atkins v. Virginia, 536 U.S. 304 (2002), the Supreme Court emphasized that the touchstone for determining society's standards is in fact "legislation enacted by the country's legislatures." Id. at 312. It is therefore noteworthy that 37 of the 38 states that allow capital punishment use lethal injection as the method of execution, and the defendants are not aware of a single state legislature that has recently moved to another method. Finally, statistics show since

2002, the number of executions by lethal injection has remained relatively static. See Death Row U.S.A., Winter 2007, NAACP Legal Defense and Education Fund. That publication states that 71 persons were executed in 2002, 65 in 2003, 59 in 2004, 60 in 2005, and 53 in 2006. Those numbers do not establish any kind of indication that "evolving standards of decency" have turned against lethal injection. The "evolving standards of decency," whatever their stage of evolution, do not give Williams an excuse for waiting to file until April 2007.

## V. THE ALL WRITS ACT SHOULD NOT BE APPLIED HERE

Defendants concede that the inmates in _Diaz_ and _Hill_ both invoked the All Writs Act in requesting a stay and the Eleventh Circuit did not say that was inappropriate. In fact, they said just the opposite. See _Diaz_, 472 F.3d at 851 ("We could grant an injunction [under the All Writs Act] to protect our jurisdiction to hear Diaz's appeal."); see _Hill_, 464 F.3d at 1258-59 ("Were we to grant a preliminary injunction in order to allow time to hear Hill's appeal [under the All Writs Act], we would be doing so to protect our appellate jurisdiction from the impending act of the State of Florida to execute Hill."). As the

following demonstrates, there are questions whether the All Writs Act applies in the context of a federal court addressing a stay of execution.

The All Writs Act provides that a federal court "may issue all writs necessary or appropriate in aid of [its] jurisdiction and agreeable to the usages and principles of law." 28 U.S.C. § 1651. This grant of authority, otherwise broad in its terms, is in fact quite narrowly circumscribed to fill only those narrow circumstances where no other, more specific statute of provision applies. Penn. Dep't of Corrections v. U.S. Marshalls' Service, 474 U.S. 34, 41-43 (1985)("Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling."). A writ issued under the All Writs Act is issued "in aid of the court's jurisdiction" when it is designed to give practical effect to a decree or injunction already entered by the court. Hodges v. Bell, 170 Fed. Appx. 389, 393 (6th Cir. 2006)(unpublished opinion).

The Eleventh Circuit, albeit in a different context, denied the use of the All Writs Act "where the relief sought is in essence a preliminary injunction. Schiavo v.

_Schiavo_, 403 F.3d 1223, 1229 (11th Cir. 2005). The Court ruled that the All Writs Act "is not available because other adequate remedies at law exist, namely Fed. R. Civ. P. 65, which provides for temporary restraining orders and preliminary injunctions." _Id._ It is also true here that Williams has a remedy at law, namely, establishing the four factors for injunctive relief. _See Rutherford v. McDonough_, 466 F.3d 970, 979 (11th Cir. 2006)(Wilson, J., dissenting)(listing four factors). The _Schiavo_ Court ruled that the injunction being sought under the All Writs Act was an obvious attempt "to circumvent the requirements for injunctive relief." _Schiavo_, 403 F.3d at 1229. The Court ultimately held that "[u]nder our circuit law, the All Writs Act cannot be used to evade the requirements for preliminary injunctions." _Id._ This Court should likewise reject Williams's attempt to do the same thing.

## VI.  CONCLUSION

Wherefore, for the foregoing reasons, the defendants respectfully request this Court deny Williams's request for a stay of execution.

                          Respectfully submitted,

                          TROY KING
                          ALABAMA ATTORNEY GENERAL


                          /s/  J. CLAYTON CRENSHAW
                          J. Clayton Crenshaw (CRE007)
                          James W. Davis (DAV103)
                          Corey L. Maze (MAZ003)
                          Jasper B. Roberts, Jr. (ROB157)
                          Assistant Attorneys General

OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7300 Office
(334) 353-8440 Fax
ccrenshaw@ago.state.al.us
jimdavis@ago.state.al.us
cmaze@ago.state.al.us
jroberts@ago.state.al.us

**CERTIFICATE OF SERVICE**

This is to certify that on the 25th day of June, 2007, a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system, which will electronically send a copy of the same to the following: **Christopher H. Little and Joel L. Sogol.**

                              /s/  J. CLAYTON CRENSHAW
                              J. Clayton Crenshaw
                              Assistant Attorney General

OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7300 Office
(334) 353-8440 Fax
ccrenshaw@ago.state.al.us
jimdavis@ago.state.al.us
cmaze@ago.state.al.us
jroberts@ago.state.al.us