IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LUTHER JEROME WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:07-cv-307-MEF-SRW |
| ) | |
| RICHARD ALLEN, Commissioner ) | |
| Alabama Department of Corrections, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

### REPLY IN SUPPORT OF PLAINTIFF'S
### MOTION FOR A TEMPORARY STAY OF EXECUTION

Plaintiff Luther Jerome Williams hereby files this reply to Defendants' opposition to Plaintiff's motion for a temporary stay of execution (Doc. #23).

Contrary to Defendants' contention, Mr. Williams did address all five of the cases cited in this Court's Order of June 7, 2007 (Doc. #19). Of those five cases, only Diaz v. McDonough, 472 F.3d 849 (11th Cir. 2006), involved a request for a stay of execution under the All Writs Act, 28 U.S.C. § 1651. Even assuming that the various equitable principals set forth in the four other cases apply in the context of an All Writs stay, there is nothing in any of those cases that forecloses the granting of a stay of execution here. Mr. Williams timely filed his execution-method challenge when it became ripe, and unlike the plaintiffs in some other cases, he has not engaged in a dilatory pattern of "[r]epetitive or piecemeal litigation." See, e.g., Hill v. McDonough, 126 S. Ct. 2096, 2104 (2006).

The Supreme Court's decision in Hill, 126 S. Ct. at 2096, which this Court ordered Mr. Williams to address, did not involve a stay request under the All Writs Act. The Eleventh Circuit did deny Clarence Hill's request for an All Writs stay in a subsequent appeal after

remand, *see* Hill v. McDonough, 464 F.3d 1256 (11th Cir. 2006), but Defendants' citation to this authority does not undercut Plaintiff's motion. By the time Mr. Hill filed his challenge to Florida's execution method in federal court, he had already fully discovered and litigated the same claim in the state courts of Florida. Hill, 464 F.3d at 1259. Indeed, his state court lawsuit had culminated at the Florida Supreme Court *before* he filed his federal suit. *Id.* As the Eleventh Circuit explained, in denying an All Writs stay, "Hill's assertion of essentially the same lethal injection challenge in the Florida courts reveals that he was aware of the grounds for the claim much earlier that the date on which he actually filed his § 1983 action in federal court." *Id.* at 1259.

Whereas Mr. Hill's § 1983 challenge to Florida's method of execution was dilatory and duplicative, Mr. Williams § 1983 challenge is neither. This is Mr. Williams' first and only lawsuit to challenge the constitutionality of Alabama's execution method, and it was filed promptly upon the conclusion of Mr. Williams' habeas review. There is absolutely no basis here to infer that Mr. Williams has filed this case for dilatory purposes.

On the question of when an execution-method challenge should be filed, the Supreme Court's recent decision in Panetti v. Quarterman, ___ S. Ct. ___, 2007 WL 1836653 (June 28, 2007), is instructive. In Panetti, the petitioner claimed that he was incompetent to be executed under the rule announced in Ford v. Wainwright, 477 U.S. 399 (1986). However, Scott Panetti first raised this claim only after the conclusion of his habeas review and the scheduling of his execution date. Panetti, ___ S. Ct. at ___, 2007 WL 1836653 at *6, Slip Op. at 4–5. Thus, the State of Texas argued, *inter alia*, that the district court lacked jurisdiction to hear Mr. Panetti's Ford claim because it constituted a "second or successive" habeas application under 28 U.S.C. § 2244. Panetti, ___ S. Ct. at ___, 2007 WL 1836653 at *9, Slip Op. at 9–10. In rejecting

2

Texas' argument, the Court explained that the state's interpretation of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") would create perverse incentives for inmates to file wasteful premature claims. Under the state's interpretation,

> A prisoner would be faced with two options: forego the opportunity to raise a Ford claim in federal court; or raise the claim in a first federal habeas application . . . even though it is premature. The dilemma would apply not only to prisoners with mental conditions indicative of incompetency but also to those with no early sign of mental illness. All prisoners are at a risk of deteriorations in their mental state. As a result, conscientious defense attorneys would be obliged to file unripe (and in many cases, meritless) Ford claims in each and every § 2254 application. This counterintuitive approach would add to the burden imposed on courts, applicants, and the States, with no clear advantage to any.
>
> * * *
>
> An empty formality requiring prisoners to file unripe Ford claims neither respects the limited legal resources available to the States nor encourages the exhaustion of state remedies. Instructing prisoners to file premature claims, particularly when many of these claims will not be colorable even at a later date, does not conserve judicial resources, reduce piecemeal litigation, or streamline federal habeas proceedings.

Panetti, ___ S. Ct. at ___, 2007 WL 1836653 at *9, *11, Slip Op. at 10, 13 (internal quotations and citations omitted).

Defendants seek to impose the same intolerable dilemma here. Although properly raised in a habeas petition rather than a § 1983 suit, a Ford-based incompetency claim, like Mr. Williams' Eighth Amendment claim, alleges a constitutional violation that occurs only at the time of execution. Like the State of Texas in Panetti, Defendants here argue for a rule that requires death row inmates to file an unripe claim (that depending upon future events such as the grant of habeas relief or a change in the execution protocol) might never ripen into a justiciable controversy or to completely forego ever being able to challenge the constitutionality of Alabama's execution method. The contention that Mr. Williams should have complied with

3

such "empty formalit[ies]" and attempted to litigate this case before it was ripe should be rejected for the same reason the Supreme Court rejected Texas' arguments in Panetti.

In their opposition, Defendants repeat at length statute of limitations and laches arguments that they previously made in support of their motion to dismiss. Mr. Williams has already addressed these issues, and he incorporates his earlier opposition papers by reference. *See* Docs. #8 and #14.

Finally, Defendants' reliance on Pennsylvania Bureau of Correction v. United States Marshals Serv., 474 U.S. 34 (1985); Hodges v. Bell, 170 Fed. Appx. 389 (6th Cir. 2006); and Schiavo *ex rel.* Schindler v. Schiavo, 403 F.3d 1223 (11th Cir. 2005), is misplaced. In Pennsylvania Bureau, the question before the Court was whether, under the All Writs Act, a federal court could order the Marshals Service to undertake the burden and expense of transporting prisoners in state custody to and from the federal courthouse in the ordinary course of litigation in federal courts. *Id.*, 474 U.S. at 40. Hodges concerned whether it was proper under the All Writs Act for a district court to order prison personnel to videotape their interactions with a prisoner who alleged unconstitutional living conditions inside the prison. *Id.*, 170 Fed. Appx. at 390. In Schiavo, the district court refused to grant a traditional preliminary injunction because the plaintiffs could not show a substantial likelihood of success on the merits of their due process claims. The Schiavo plaintiffs, being unable to establish an abuse of discretion on the part of the district court, argued that the Eleventh Circuit should nevertheless issue a preliminary injunction on the basis of the All Writs Act.

Regardless of whether an All Writs Act order would have been authorized or proper in any of those cases, it is beyond question that this Court has authority under the Act to stay an execution in this case. *See* Diaz, 472 F.3d at 851; Hill, 464 F.3d at 1258–59. Given that

Defendants appear to concede this point, *see* Defs.' Opp. at 27 (Doc. #23), their citations to Pennsylvania Bureau, Hodges, and Schiavo amount to little more than misdirection.

As set forth in Mr. Williams' original motion (Doc. #18) and his supplemental brief (Doc. #20), the equities here favor a temporary stay under the All Writs Act. The Court should act to preserve its jurisdiction so that it may hear and decide the merits of his claim.

> Respectfully submitted,
>
> /s/ Joel L. Sogol
> Joel L. Sogol, Esq. (SOG-001)
> 811 21st Avenue
> Tuscaloosa, AL 35401
> (205) 345-0966
> Fax: (205) 345-0971
> Email: jlsatty@wwisp.com
>
> /s/ Christopher H. Little
> Christopher H. Little, Esq. (R.I. #1789)
> LITTLE MEDEIROS KINDER BULMAN &
> WHITNEY, P.C.
> 72 Pine Street
> Providence, RI 02903
> (401) 272-8080
> Fax (401) 521-3555
> Email: clittle@lmkbw.com,
>
> Counsel for Luther Jerome Williams

Dated: July 3, 2007

## CERTIFICATE OF SERVICE

    I hereby certify that on this third day of July 2007, I caused a true copy of the within Reply In Support of Plaintiff's Motion for a Temporary Stay of Execution to be filed electronically with the Court's CM/ECF system and thereby served upon each of the following via email:

| | |
|---|---|
| James Clayton Crenshaw, Esq. | James William Davis, Esq. |
| (ccrenshaw@ago.state.al.us) | (jimdavis@ago.state.al.us) |
| Office of the Attorney General | Office of the Attorney General |
| Alabama State House | Alabama State House |
| 11 South Union Street | 11 South Union Street |
| Montgomery, AL 36130 | Montgomery, AL 36130 |

                                              /s/ Joel L. Sogol