IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LUTHER JEROME WILLIAMS, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) CASE NO. 2:07-cv-307-MEF-SRW |
| | ) |
| RICHARD ALLEN, et al., | ) (WO-Not Recommended for Publication) |
| | ) |
| DEFENDANT. | ) |

## __MEMORANDUM OPINION AND ORDER__

On April 10, 2007, Luther Jerome Williams ("Williams"), an Alabama death row inmate scheduled for execution on August 23, 2007, filed this civil rights action in which he seeks declaratory and injunctive relief aimed at stopping the State of Alabama from executing him using its lethal injection protocol. This cause is now before the Court on the Defendants' Motion to Dismiss (Doc. # 6). The Court has carefully considered the arguments in support of and in opposition to this motion and the applicable law. For the reasons set forth in this Memorandum Opinion and Order, the Court finds that the motion is due to be GRANTED.

### JURISDICTION AND VENUE

Williams alleges that Alabama's method of execution violates his rights under the Eighth and Fourteenth Amendment of the United States Constitution and brings suit pursuant to the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983. ("§ 1983")

Consequently, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. Based on the allegations of the Complaint, the Court further finds that venue is appropriate and that both defendants are subject to personal jurisdiction in this Court.

**BACKGROUND, FACTUAL ALLEGATIONS, AND PROCEDURAL HISTORY**

On November 30, 1989, Williams was convicted of capital murder[1] in Tuscaloosa County, Alabama. Compl. at ¶ 6. He was convicted of the January 1988 murder of John Robert Kirk. The facts of Williams' crime are set forth in the Eleventh Circuit Court of Appeal's opinion affirming dismissal of his petition for writ of habeas corpus:

> On January 22, 1988, a 1981 dark blue Oldsmobile Regency automobile was stolen from a motel parking lot in Birmingham, Alabama. In the trunk of this vehicle was, among other items, a .22 caliber pistol. A dark blue car arrived at the Smithfield housing project in Birmingham later that same evening and [Williams] was identified as the sole occupant. On the morning of January 23, 1988, John Robert Kirk was on his way home from work. He stopped his vehicle - a red 1984 Chevrolet pickup truck with a camper on the back - near the West Blocton exit on Interstate 59 South in Tuscaloosa County. [Williams] and two men were traveling south on Interstate 59 in the stolen Oldsmobile. After noticing the victim's vehicle beside the road, they stopped and confronted him. [Williams] led the victim to a nearby wooded area and shot him once in the left side of the head, "execution style," with the .22 caliber pistol which had been in the trunk of the stolen Oldsmobile. The victim's body was left at the site of the shooting, and his money and vehicle

---

[1] Williams was convicted of intentional murder during the course of a robbery which was made a capital offense by Alabama Code § 13A-5-40(a)(2) (1975). *Williams v. State*, 601 So. 2d 1062, 1065 (Ala. Cr. App. 1991).

were taken.

*Williams v. Allen*, 458 F.3d 1233, 1235-36 (11th Cir. 2006). On February 12, 1990, Williams was sentenced to death.[2] *Id.* Williams pursued an unsuccessful direct appeal of his conviction and sentence.[3]

After the completion of his unsuccessful direct appeal, Williams pursued an equally unsuccessful collateral attack in the state court system. On April 8, 1994, Williams filed a petition for post-conviction relief pursuant to Alabama Rule of Criminal Procedure 32 in the court of his conviction, which petition he later amended. *Williams v. State*, 783 So. 2d 108, 111-112 (Ala. Crim. App. 2000). After a hearing in 1997, the Circuit Court denied Williams' Rule 32 petition. *Id.* at 112. Williams unsuccessfully appealed the denial of his Rule 32 petition.[4]

On March 29, 2001, after exhausting his available legal challenges in the state courts

---

[2] The jury recommended that Williams be given a death sentence and the trial court accepted its recommendation and sentenced Williams to death by electrocution. *Williams v. State*, 601 So. 2d at 1065.

[3] On June 14, 1991, the Alabama Court of Criminal Appeals affirmed his conviction and sentence. *Williams v. State*, 601 So. 2d 1062 (Ala. Crim. App. 1991). On March 6, 1992, the Alabama Supreme Court granted his petition for writ of *certiorari* and affirmed without opinion. *Ex parte Williams*, 662 So. 2d 929 (Ala. 1992). The United States Supreme Court denied his writ of *certiorari*. *Williams v. Alabama*, 506 U.S. 957 (1992)

[4] On March 31, 2000, the Alabama Court of Criminal Appeals affirmed the denial of Williams' Rule 32 petition. *Williams v. State*, 783 So. 2d 108 (Ala. Crim. App. 2000). The Alabama Court of Criminal Appeals denied rehearing, and then on October 27, 2000, the Alabama Supreme Court denied his petition for writ of *certiorari* on this case. *Williams v. Allen*, 458 F.3d 1233, 1237 (11th Cir. 2006).

of Alabama, Williams filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of Alabama. *Williams v. Allen*, 458 F.3d 1233, 1237 (11th Cir. 2006). He later amended his habeas corpus petition on June 7, 2001. *Id.* On April 20, 2005, the United States District Court for the Northern District of Alabama denied Williams relief on his federal habeas corpus petition and dismissed it. *Id.* On August 2, 2006, the Eleventh Circuit Court of Appeals affirmed the dismissal. *See generally*, *Williams v. Allen*, 458 F.3d 1233. On March 26, 2007, the United States Supreme Court denied Williams' petition for writ of *certiorari*. *Williams v. Allen*, 127 S. Ct. 1874 (2007).

While Williams' federal habeas corpus petition was pending the in the United States District Court for the Northern District of Alabama, the State of Alabama changed its primary method of execution. On July 1, 2002, the State of Alabama changed its primary method of execution from electrocution to lethal injection and gave death row inmates thirty days from the date on which the Alabama Supreme Court's affirmed their death sentences to elect electrocution instead. *See Grayson v. Allen*, No. 07-12364, 2007 WL 2027903 at *2 (11th Cir. July 16, 2007)[5]; Ala. Code § 15-18-82.1. It is undisputed that Williams did not elect electrocution and by operation of law will be executed by lethal injection. Consequently, his challenge in this lawsuit is to his execution by lethal injection under the

---

[5] The Eleventh Circuit Court of Appeals has indicated that the *Grayson* opinion is to be published, however, the official citation for the federal reporter is not yet available.

protocol currently employed by the State of Alabama.

Consistent with its practice of asking the Supreme Court of Alabama to set execution dates for death row inmates shortly after the United States Supreme Court denies certiorari review of such prisoners' federal habeas petitions,[6] the State of Alabama filed a motion asking the Supreme Court of Alabama to set an execution date for Williams. *See* Ex. A to Doc. # 6. This request was filed on April 4, 2007. *Id.* Williams filed an opposition to the motion. *See* Ex. A to Doc. # 18.

After the State of Alabama asked the Supreme Court of Alabama to set an execution date for Williams, he filed this lawsuit. On April 10, 2007, Williams filed this action challenging the method of execution. Williams names two defendants: Richard Allen, the Commissioner of the Alabama Department of Corrections, and Grantt Culliver, the Warden

---

[6] As the Eleventh Circuit Court of Appeals has explained,

> [t]he Alabama Supreme Court is authorized to enter an order fixing an inmates date of execution "at the appropriate time." Ala. R. App. P. 8(d) ("The supreme court *shall at the appropriate time* enter an order fixing a date of execution." (emphasis added)). It is common practice in Alabama for the State to seek an execution date soon after the Supreme Court denies *certiorari* review of an inmate's federal habeas petition. As a matter of common sense, completion of collateral review eliminates the last possible obstacle to execution, and [a death-sentenced inmate] should [foresee] that the execution date would likely be set promptly upon completion of collateral review.

*Jones v. Allen*, 485 F.3d 635, 639 n.2 (11th Cir. 2007).

of Holman Correctional Facility (collectively referred to as "Defendants").[7] Compl. at ¶ 5. He contends that the Alabama Department of Corrections is responsible for carrying out executions in Alabama and that all executions take place at Holman Correctional Facility. Compl. at ¶ 7. Williams further alleges that the three drug protocol Alabama currently uses in lethal injection executions is likely to cause him an excruciatingly painful and torturous death. Compl. at ¶ 8. Williams alleges that, like other states employing execution by lethal injection, the State of Alabama uses Thiopental[8], Pavulon[9], and potassium chloride to anesthetize, paralyze, and induce cardiac arrest. Compl. at ¶ 8. In addition to challenging the actual drugs Alabama uses in executions, Williams contends that Alabama's anesthesia procedures lack medically necessary safeguards and increase the risk that he will suffer unnecessary pain. Compl. at ¶¶ 8-19. He also challenges the qualifications of those tasked with injecting the drugs and the lack of the involvement of properly licensed and credentialed medical personnel. *Id.*

Invoking this Court's equitable powers, Williams seeks an injunction barring

---

[7] The Complaint also purports to bring claims against other unknown employees and agents of the Alabama Department of Corrections involved in the development and execution of lethal injections. Compl. at ¶ 5. Of course, there is no fictitious party practice in federal courts. *See, e.g.,* Fed. R. Civ. P. 10(a); *New v. Sports & Recreation, Inc.,* 114 F.3d 1092, 1094 n.1 (11th Cir. 1997); *Harris v. Palm Harbor Homes, Inc.,* 198 F. Supp. 2d 1303, 1304 n.6 (M.D. Ala. 2002); *Edwards v. Alabama Dep't of Corr.,* 81 F. Supp. 2d 1242, 1257 (M.D. Ala. 2000). Accordingly, there are only two proper party defendants to this lawsuit.

[8] This drug is also known as sodium pentothal. Compl. at ¶ 9.

[9] This drug is also known as pancuronium bromide. Compl. at ¶ 11.

Defendants from executing him with inadequate anesthesia and execution procedures that violate the Eighth Amendment prohibition against cruel and unusual punishment. He also seeks a declaratory judgment that Defendants' lethal injection protocol violates that prohibition. Finally, he seeks an award of attorney's fees pursuant to 42 U.S.C. § 1988 and the costs of this lawsuit.

On May 7, 2007, Defendants filed the motion to dismiss. Doc. # 6. They argue that the claims in the Complaint are time-barred either by operation of the statute of limitations or by the document of laches. The essence of both of the State of Alabama's arguments is that Williams waited too long to file his action. Williams has briefed his opposition to this motion. Doc. # 8.

On May 21, 2007, the Supreme Court of Alabama entered an Order setting an execution date of August 23, 2007 for Williams. Doc. # 12. On June 6, 2007, Williams filed a motion with this Court seeking a temporary stay of his execution pursuant to the All Writs Act arguing that his execution should be postponed until after he has an opportunity to litigate this action. Doc. # 18. The State of Alabama opposed the temporary stay. Doc. # 23. On July 10, 2007, this Court applied the binding precedent from the Eleventh Circuit Court of Appeals and denied Williams' request for a temporary stay of his execution. Doc. # 25. Despite the fact that his execution date is rapidly approaching, Williams has not asked this Court to expedite its consideration of the pending motion to dismiss, nor has he sought to expedite this case in any way.

## DISCUSSION

In June of 2006, the United States Supreme Court held that a death row inmate in Florida could bring a claim pursuant to § 1983 raising a challenge to the constitutionality of the particular method of lethal injection planned for his execution even though he had already brought an unsuccessful federal habeas corpus petition which did not include such a claim. *Hill v. McDonough*, 126 S. Ct. 2096 (2006).[10] By filing this lawsuit, Williams seeks to do just that. He challenges the lethal injection protocol used by the State of Alabama for executions since a change in Alabama law in 2002.

When the United States Supreme Court clarified that an action such as this one could be brought pursuant to § 1983,[11] it clearly stated that "[f]iling an action that can proceed under § 1983 does not entitle the complainant to an order staying an execution as a matter

---

[10] In accordance with then existing precedent from the Eleventh Circuit Court of Appeals, the United States District Court for the Northern District of Florida had dismissed Hill's complaint due to for failure to comply with the requirements for a successive habeas petition. 126 S. Ct. at 1099, 2101. The Eleventh Circuit Court of Appeals affirmed. *Id.* On January 25, 2006, the United States Supreme Court granted Hill's petition for writ of *certiorari*. 126 S. Ct. 1189 (2006). On June 12, 2006, the United States Supreme Court decided the case and reversed the Eleventh Circuit Court of Appeals. 126 S. Ct. 2096.

[11] The Court does not mean to suggest that Williams was precluded from bringing this action prior to the Supreme Court's decision in *Hill*. To the contrary, unfavorable circuit precedent does not foreclose all avenues for relief or excuse delay in raising § 1983 lethal injection claims. *Grayson*, 2007 WL 2027903 at *4. After all, the plaintiff in *Hill* was not deterred by the unfavorable precedent from the Eleventh Circuit and his suit is what ultimately changed the law in this circuit. *Id.* Moreover, Williams' argument is not persuasive because he waited to file this lawsuit until approximately fifteen months after the grant of *certiorari* in *Hill* and approximately ten months after the decision in *Hill* removed the supposed impediment of the unfavorable circuit precedent. *Id.*

of course." 126 S. Ct. at 2104. Furthermore, it recognized that "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence" which interest was not diminished by the recognition of the ability of the inmate to file an action pursuant to § 1983. *Id.* The Supreme Court further explained that its decision recognizing the ability of death row inmates to bring such claims was not intended to deprive federal courts of the means to protect the interest of the State and the victims of crime in the timely enforcement of a sentence. *Id.* Indeed, the Supreme Court made plain that "[t]he federal courts can and should protect States from *dilatory* or speculative suits[.]" *Id.* (emphasis added).

Since the Supreme Court's decision in *Hill*, the Eleventh Circuit Court of Appeals has twice affirmed the dismissal of cases brought inmates sentenced to death challenging the method of execution pursuant to § 1983. *See, e.g., Grayson v. Allen*, No. 07-12364, 2007 WL 2027903 at *1 (11th Cir. July 16, 2007) (explaining that district court properly dismissed action because of plaintiff's unnecessary delay in seeking equitable relief pursuant to § 1983);[12] *Rutherford v. McDonough*, 466 F.3d 970 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 465 (2006) (affirming the district court's dismissal of § 1983 complaint on equitable

---

[12] Williams contends that this Court should not consider *Grayson* because it was decided by the district court on a motion for summary judgment and not a motion to dismiss. The Court notes that the language of the Eleventh Circuit decision in *Grayson* emphasizes the appropriateness of *dismissal* of an unnecessarily delayed action seeking injunctive relief. More importantly, *Grayson* is merely a logical extension or further refining of the holding of *Rutherford* which specifically addressed the appropriateness of a ruling on a motion to dismiss.

9

grounds).[13] In deciding *Rutherford*, the Eleventh Circuit explained that when an inmate sentenced to death seeks to challenge the method of execution in a suit brought pursuant to § 1983 that includes a prayer for a permanent injunction, well-established equitable principles must be applied and these principles are equally applicable to all types of equitable relief whether that relief is permanent or temporary. 466 F.3d at 976. *Accord, Grayson*, 2007 WL 2027903 at *3 ("Additionally, the equitable principles at issue when inmates facing imminent execution delay in raising their § 1983 method-of-execution challenges are *equally applicable to requests for both stays and injunctive relief*.") (emphasis added). This means

---

[13] In fact, the Eleventh Circuit twice affirmed the district court's dismissal of Rutherford's § 1983 challenge to Florida's lethal injection protocol, which like Alabama uses sodium thiopental, pancuronium bromide, and potassium chloride. *Rutherford v. Cosby*, 466 F.3d 970, 1089-93, 1099-1100, & n.3 (11th Cir. 2006); *Rutherford v. Cosby,* 438 F.3d 1087 (11th Cir. 2006). Rutherford filed his § 1983 suit challenging Florida's lethal injection procedure and seeking a permanent injunction less than a week before his scheduled execution. *Rutherford v. Crosby*, 438 F.3d at 1092. The district court dismissed on two alternative grounds: (1) Rutherford's claim was properly brought as a habeas corpus proceeding, and he had not obtained the requisite order from the Eleventh Circuit permitting him to file a second or successive petition; and (2) even if the complaint states a cognizable claim under § 1983, he had unnecessarily delayed in bringing his claim and thus was not entitled to injunctive relief. 438 F.3d at 1089. In its first hearing of Rutherford's appeal, the Eleventh Circuit Court of Appeals affirmed on both grounds. 466 F.3d at 973. Thereafter, the United States Supreme Court granted a stay of execution to Rutherford, granted *certiorari*, and vacated the Eleventh Circuit's judgment with instructions for the case to be reconsidered in light of *Hill*. *See, e.g., Rutherford v. Crosby*, 126 S. Ct. 1191 (2006) (granting a stay); *Rutherford v. McDonough*, 126 S. Ct. 2915 (2006) (granting *certiorari*, vacating and remanding). On remand, the Eleventh Circuit reiterated its prior holding that the case was due to be dismissed because Rutherford could and should have brought it earlier and again affirmed the district court on this basis. 466 F.33d at 973-78. Thereafter, the United States Supreme Court denied Rutherford's petition for writ of *certiorari* on that issue.

that a district court faced with a motion to dismiss a claim for prospective injunctive relief pursuant to § 1983 by an inmate seeking to challenge the method of execution must consider the interests of the State in enforcing its criminal judgments without undue interference from the federal courts and the interests of the family of the victims interest in the timely enforcement of a death sentence. *See Hill*, 126 S. Ct. at 2104; *Rutherford*, 466 F.3d at 976. Additionally, the court must consider whether the plaintiff has been dilatory in bringing his claim. *Rutherford*, 466 F.3d at 974.

Of course, one might have read *Rutherford* as narrowly holding that a § 1983 action challenging a method of execution and seeking injunctive relief is due to be dismissed if the plaintiff has unnecessarily delayed in bringing the claim by waiting until less than a week before a scheduled execution date to file his claim. 466 F.3d at 974. Obviously in that case, such a plaintiff would know "that the discovery, evidentiary hearing, and decision on the merits that he demands could not possibly be accomplished in that short period of time." *Id.* The Eleventh Circuit's more recent decision in *Grayson*, however, clarifies that unreasonable delay encompasses more than waiting until less than a week before a scheduled execution to file suit.[14]

---

[14] This is not so surprising a result. It is not realistic to expect this type of case to be able to be litigated in less than a year. Discovery, briefing dispositive motions, evidentiary hearings, and the like take a great deal of time. The burdens of docket congestion or the complexity of issues may further slow litigation. The appeal process also takes time. Thus, a litigant should know that waiting until weeks or months before his execution date is likely to be set or until after the request for the setting of an execution date has been made to file this type of suit is a high risk strategy. Waiting to file suit during the brief window of time

The Eleventh Circuit Court of Appeals held in *Grayson* that the death row inmate's challenge pursuant to § 1983 seeking declaratory and injunctive relief due to an alleged future violation of the inmate's rights under the Eighth and Fourteenth Amendment was appropriately dismissed because the inmate "delayed unnecessarily" in bringing the action and "did not leave sufficient time for full adjudication on the merits." 2007 WL 2027903 at *6-*7. In reaching this conclusion, the Eleventh Circuit held that the plaintiff in *Grayson* had waited until his execution was imminent. *Id.* In that case, the execution had twice been "imminent": once "when his § 2254 post-conviction proceedings were completed" and once again when his the Eleventh Circuit affirmed the dismissal of an earlier filed § 1983 action that had resulted in a temporary stay of his execution. *Id.* at *7. Thus, *Grayson* has clarified that *Rutherford* applies not only to cases filed within days of execution, but also that the rule announced in *Rutherford* applies to § 1983 suits for injunctive relief that are not filed in sufficient time to allow full adjudication on the merits without entry of a stay. *See generally, Grayson*, 2007 WL 2027903 *1. This binding precedent must inform this Court's analysis of the motion to dismiss now pending before it.

Like the plaintiff in *Grayson*, Williams waited to bring this action. He filed this

---

between the denial of *certiorari* on the inmate's federal habeas petition and the state's chosen execution date allows an insufficient period in which to litigate the issues raised on the merits. *See, e.g., Jones v. Allen,* 485 F.3d at 639 n.2 (discussing the foreseeability of the risks of waiting until too late to file suit and the inadequacy of the length of time between the denial of *certiorari* on the federal habeas petition and the execution date for litigation of the merits).

lawsuit more than eighteen years after he was convicted and sentenced to death. He filed this lawsuit nearly fifteen years after the conclusion of his unsuccessful direct appeal of his conviction and sentence. He filed this lawsuit nearly seven years after the conclusion of his unsuccessful Rule 32 proceedings. He filed this suit more than six years after he commenced his federal habeas corpus suit. He filed this suit nearly five years after he knew that the State of Alabama would use lethal injection to execute him. He filed this suit approximately fifteen months after the United States Supreme Court granted the writ of *certiorari* in the *Hill* case. He filed this suit approximately ten months after the United States Supreme Court issued its decision in *Hill*. He filed this lawsuit after the conclusion of his unsuccessful federal habeas corpus action.[15] He filed this lawsuit after the State of Alabama moved for the setting of an execution date. In this Court's view, Williams waited until there was no possible way for this Court to adjudicate the merits of the claims in this lawsuit without entry of a stay.

While Williams could not have brought this lawsuit challenging the lethal injection protocol employed by the State of Alabama for executions before 2002, when it adopted that method of execution, he certainly could have done so any time after that. His delay was

---

[15] The district court ruled against Williams on his federal habeas petition nearly a year before he filed suit. When the Eleventh Circuit affirmed the district court ruling on that case on August 2, 2006, Williams did not file this lawsuit. Instead he waited until April 10, 2007, two weeks after the United States Supreme Court denied *certiorari* on Williams' federal habeas claims.

unnecessary and inexcusable.[16] Like the plaintiff in *Grayson*, if Williams "truly had intended to change Alabama's lethal injection protocol, he would not have deliberately waited to file suit until a decision on the merits would be impossible without the entry of a stay or an expedited litigation schedule." *Grayson*, 2007 WL 2027903 at *7. The Court finds no justification for Williams' failure to bring this action earlier and his dilatory filing of this suit leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out. Both the State of Alabama and the family of the victim of Williams' crime have strong interests in seeing Williams' punishment carried out after waiting more than eighteen years. *Grayson*, 2007 WL 2027903 at *8.

---

[16] Williams contends that his claim was not ripe prior to the United States Supreme Court's denial of *certiorari* on his petition for federal habeas corpus relief on March 26, 2007. The Eleventh Circuit has rejected this argument. *See Jones v. Allen*, 485 F.3d at 639 n.2. Indeed, there is no convincing reason why, after Alabama made lethal injection its primary method of execution, any inmate who is reasonably likely to be executed in the future could not have brought a method-of-injection challenge. *See* 485 F.3d at 640. Additionally, the Court rejects Williams related argument that he cannot be found to have delayed unnecessarily in filing his suit because the harm he seeks to avoid has not yet occurred. While Williams is correct that he is seeking prospective injunctive relief to avoid what he alleges would be a future violation of his constitutional rights, he is not correct that he cannot be found to have delayed unreasonably because that future harm has not yet occurred. Obviously, the future harm had not occurred in *Grayson* or in *Rutherford* either. Like this case, those cases sought prospective injunctive relief relating to an execution to be conducted at a date in the future. There is simple no way to square Williams' argument in this regard and the holdings of those cases. Indeed, Williams' arguments as to why his delay was "reasonable" lack support in the law of this Circuit and many have already been rejected by the Eleventh Circuit. *See, generally, Grayson*, 2007 WL 2027903 *1; *Jones*, 485 F.3d 635; *Rutherford*, 466 F.3d 970.

In light of the Eleventh Circuit's decision in *Grayson*, this Court is compelled to find that Williams is not entitled to injunctive relief because he delayed in filing his method-of-execution § 1983 suit until his execution was imminent. He did not file this lawsuit until after the last possible obstacle to the State of Alabama setting his execution date had passed. Indeed, Williams did not file this lawsuit until *after* the State of Alabama had filed a motion asking the Supreme Court of Alabama to set his execution date. Given the strong presumption against the grant of equitable relief to those who have been dilatory in requesting it, Williams' suit is due to be dismissed because he unnecessarily delayed in bringing suit until his execution was imminent and until there was not sufficient time to allow full adjudication on the merits of his claims without entry of a stay of his execution.

In light of this Court's conclusion that dismissal is warranted on equitable grounds, the Court need not and will not address the State of Alabama's alternative argument that Williams' claim is barred by the statute of limitations. Due to the nature of the claims, the statute of limitations issue is, in this Court's view, a complex issue. It is also one on which this Court has little guidance. There are few district court opinions from this Circuit on the issue, and those opinions conflict with what appears to be the sole existing decision from a Circuit Court of Appeals. *Compare, Jones v. Allen*, 483 F. Supp. 2d 1142 (M.D. Ala. 2007) (Thompson, J.) (holding that statute of limitations did not bar claim because statute did not start to run until there was an invasion on a legally protected interest of the plaintiff which in these suits would not occur until the execution itself) *with Cooey v. Strickland*, 479 F.3d

412 (6th Cir. 2006), *reh'g denied*, No. 05-4057, 2007 WL 1574663 *1 (6th Cir. 2007) (holding that statute of limitations begins to run at the later of either the conclusion of the direct review of the death sentence or the date when the challenged protocol became the state's exclusive execution method). Neither the United States Supreme Court, nor the Eleventh Circuit Court of Appeals has addressed the issue in this context. In fact, the Eleventh Circuit had the issue before it in *Grayson* and declined to address it in light of its holding. 2007 WL 2027903 at *8 n.5. This Court will take this cue from the Circuit and do likewise.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Dismiss (Doc. # 6) is GRANTED. A separate final judgment will be entered.

DONE this the 30th day of July, 2007.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE